poration to vote on the particular question. Section 64 of Act No. 250 of 1928, p. 458.

 If the two other stockholders, Holbrook and Viola, were not entitled to the alleged increase in their salaries, plaintiff's remedy, when he learned of the increase, was to sue, as a minority stockholder, to revise the salaries and compel a return to the corporation of the amounts received illegally by Holbrook and Viola. Act No. 267 of 1914, § 18 (b) and (d), and section 19, pp. 528 and 529, gave the plaintiff that right, as a stockholder having not less than 10 per cent. of the capital stock of the corporation. Crichton v. Webb Press Co., 113 La. 167, 36 So. 926, 67 L. R. A. 76, 104 Am. St. Rep. 500; Carey v. Dalgarn Construction Co., 171 La. 246, 130 So. 344. The plaintiff in this case gave up his remedy in that respect by disposing of his stock.

There is another reason why the plaintiff has no right of action against the corporation from which he withdrew as a stockholder. He admits in his petition that the cause of complaint set forth in this suit was the so-called "moving cause" for his selling his stock to one of the two stockholders of whose dealings with the corporation he complained; and he does not allege that, in selling his stock, he informed the buyer that he intended to bring this suit against the corporation on the cause of action which was the "moving cause" for the sale of the stock. The injustice of such a suit would be not only to the buyer of the plaintiff's stock, but to any one else who may have bought stock in the corporation. It is not alleged in plaintiff's petition that Holbrook and Viola continued to be the only stockholders after plaintiff sold his stock to Viola; and, as the law (sections 1 and 14 of Act No. 267 of 1914, pp. 522 and 527) requires at least three stockholders and directors to constitute a corporation, it may well be as-

sumed that Holbrook and Viola are not now the only stockholders of this corporation.

The judgment is affirmed.

(135 So. 376)

## CANAL BANK & TRUST CO. v. DENNY.

No. 30793.

May 25, 1931.

Felix Wilfred Gaudin, Milton R. De Reyna, and Edna Konrad Gaudet, all of New Orleans, for appellant.

Dart & Dart, of New Orleans, for appellee.

ST. PAUL, J.

This is an action by plaintiff to recover from defendant $6,988.10, the amount of a check deposited by defendant but not paid for want of funds to the credit of the drawer; which check was deposited with the understanding that if not paid it might be charged back to the account of the depositor. The agreement in full being as follows: "Checks, drafts and other items drawn on this (branch) office of this bank, not good at the close of the business day on which deposited, may be charged back to the customer; and if drawn on any other office of this bank, may be charged back to the customer if not finally paid at such office."

The facts are substantially these: Plaintiff has a main office and a number of branches in the city of New Orleans, and defendant was a depositor in one of the branches, to wit, the Ninth Street Market Branch. For the convenience of depositors the branch offices are opened Saturday nights with the understanding that deposits made on such nights shall be received as of date the following Monday. Now the plaintiff has, as of necessity it must have, a sort of internal clearing house between its various offices or branches, by which all checks on the different offices are sent to the main office on the morning after they are deposited, and if not paid at the branch on which drawn by 2 o'clock of that day are returned to the branch from which they are received and charged back to the depositor. And this custom is exactly in accord with the custom of the general clearing house between different banks.

On the night of Saturday, January 26, 1929, defendant deposited in the branch bank a check of Fontaine Martin & Co., drawn on the main office for the aforesaid amount. This check was credited to him, according to custom and agreement, on Monday, January 28, 1929, and in the usual course of business was sent to the main office next morning. Neither on that day nor on the Monday before, nor on any subsequent day, did Fontaine Martin & Co., have any funds in said main office; in fact, they then were, and still are, overdrawn. Accordingly, at 2 o'clock p. m. the check was returned to the branch office and charged back to defendant; and as his balance was not sufficient to discharge it, this suit is brought for the amount thereof.

The defense is (1) that plaintiff has paid the Fontaine Martin check, and (2) that if it did not it should have done so.

■ The claim that the plaintiff has paid the Fontaine Martin check is based upon the fact that on Monday morning the plaintiff certified one check for defendant for the sum of $4,975 and paid other checks of his for the difference. This contention is not well founded. It is true that before certifying and paying defendant's checks, the teller (at the main office) inquired by telephone of the branch office whether defendant's account was good for the amount, and was informed that it was. But this was upon the supposition and the fact that defendant's account showed a

balance sufficient to pay the amount of all such checks. But it was not intended to be, and it was not in fact, a guaranty that any checks which defendant had deposited to make up such account had been collected or were absolutely good. All business is essentially based on credit; defendant's credit was perfectly good; and plaintiff's allowing defendant to draw the amount of his apparent deposit was based upon the fact that his credit was good and that he would abide by his agreement to make good any checks deposited by him and not finally paid in due course. The fact that this particular check was drawn upon another branch of plaintiff bank, instead of on some other bank, makes no difference; since to all intents and purposes the agreement as to deposits was that the different branches of plaintiff bank were to be considered as separate banks and certainly had the Fontaine Martin check been drawn on a separate bank there would not even be so much as a pretext for holding plaintiff liable for the amount thereof. For it is clear that plaintiff was guilty of no negligence in handling the check, and handled it in the usual method. Certainly a bank dealing with a reputable depositor, of good credit, with an apparent balance sufficient to meet his checks, is not required under pain of loss to examine each item deposited and ascertain its ultimate value before paying the depositor's check; and any such rule, if made a matter of law, would well nigh disrupt the usual and orderly conduct of the banking business. Bankers should be held to a speedy and careful handling of the checks and drafts deposited with them by their customers, but this obligation of theirs should not be converted by the courts into traps for fixing upon them a liability which was never contemplated when in good faith they rely upon the credit and good repute of their customers and pay their checks on the faith of their apparent balances.

Nor do we think that plaintiff was under any obligation to pay the check of Fontaine Martin & Co., because they had heretofore been in the habit of allowing them to overdraw their account at times. A man may allow credit to another, if he see fit to do so, but this does not oblige him to extend that credit at any and all times thereafter. The banker, like the butcher, the baker, and the grocer, extends credit when he thinks the customer is good for the amount of the credit, but he shuts it off when he thinks the customer is no longer able to respond to his obligations; and it is simply impossible to conceive any theory of law or of sound reason why he should not be at liberty to do so.

The trial judge thought the case was with plaintiff, and we see no error therein.

### Decree.

The judgment appealed from is therefore affirmed.