990 F.Supp. 737 (1997)
HORSESHOE ENTERTAINMENT, L.P., et al., Plaintiffs,
v.
GENERAL ELECTRIC CAPITAL CORPORATION, Defendant.
No. 4:96-CV-0695 CAS.
United States District Court, E.D. Missouri, Eastern Division.
February 21, 1997.
*738 *739 Martin M. Green, Partner, Mitchell A. Margo, Partner, Green and Schaaf, St. Louis, MO, for Horseshoe Entertainment, a, Lousiana Limited Partnership, plaintiff.
Rodney W. Sippel, Markus P. Cicka, Husch and Eppenberger, St. Louis, MO, for General Electric Capital Corporation, defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This diversity matter is before the Court on defendant's motion to dismiss.
Background. This action was removed from this Circuit Court of St. Louis County, Missouri pursuant to 28 U.S.C. § 1332. In their Petition, plaintiffs allege they operate riverboat casinos in Louisiana and Mississippi. Plaintiffs executed four installment notes (the "Notes") and other financing documents and agreements securing the Notes in favor of defendant General Electric Capital Corporation's ("GE") successors in interest, to finance the purchase of certain gaming equipment. GE purchased the Notes and other instruments in August 1995. Plaintiffs allege they negotiated an oral agreement with GE to prepay the Notes without a prepayment premium, and then expended significant time and expense in obtaining replacement financing in reliance on the oral agreement. Plaintiffs allege that after they had closed on replacement financing, GE refused to accept their tendered prepayment without the prepayment premium, and plaintiffs were forced to pay GE a prepayment premium of $308,783.94 in order to meet their obligations to the new lenders.
Plaintiffs' five-count complaint asserts state law claims for negligent misrepresentation (Count I), fraud (Count II), detrimental reliance (Count III), breach of contract (Count IV), and quantum meruit (Count V). GE moves to dismiss each count pursuant to Federal Rule of Civil Procedure 12(b)(6). GE asserts several grounds for its motion to dismiss, but its primary argument is based on the provisions of the Missouri statute of frauds governing credit agreements, R.S.Mo. § 432.045.1-.2 (1994) GE also moves to dismiss Count II for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b), or in the alternative, that plaintiffs be required to state their fraud claim with more particularity. Plaintiffs oppose the motion.
Standard of Review. Attached to GE's reply memorandum in support of its motion to dismiss are an affidavit and several exhibits. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court." Woods v. Dugan, 660 F.2d 379, 380 (8th Cir.1981) (per curiam). When matters outside the pleadings *740 are presented on a motion to dismiss, a court may either treat the motion as one to dismiss and exclude the matters outside the pleadings, or treat the motion as one for summary judgment and provide the parties with notice and an opportunity to provide further materials. See Gibb v.. Scott, 958 F.2d 814, 816 (8th Cir.1992).
Constructive notice that the court will consider matters outside the pleadings is sufficient where the nonmoving party has had an adequate opportunity to respond to the summary judgment motion and there is a lack of any showing that any material facts were disputed or missing from the record. See Madewell v. Downs, 68 F.3d 1030, 1048 (8th Cir.1995); Davis v. Johnson Controls, Inc., 21 F.3d 866, 867 (8th Cir.1994); Angel v. Williams, 12 F.3d 786, 788-89 (8th Cir. 1993); Gibb v. Scott, 958 F.2d at 816. The Court finds this to be the situation here and will construe GE's motion to dismiss as a motion for summary judgment.
The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Cooperative, Inc., 838 F.2d 268, 273 (8th Cir.1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether the moving party has met its burden, all evidence and inferences are to be viewed in the light most favorable to the non-moving party. Johnson v. Enron Corp., 906 F.2d 1234, 1237 (8th Cir.1990).
Discussion. With this standard in mind, the Court turns to the merits of GE's motion to dismiss, construed as a motion for summary judgment.
A. Count IV. GE first argues that Count IV, which alleges breach of an oral contract, is barred by the Missouri statute of frauds governing credit agreements, § 435.045.1-.2. The statute prohibits a debtor from maintaining an action on or defense to a credit agreement unless the agreement is in writing. See § 435.045.2. A credit agreement is defined as "an agreement to lend or forbear repayment of money, to otherwise extent credit, or to make any other financial accommodation." § 435.045.1.
Plaintiffs respond that the statute does not apply because, inter alia, the Notes they signed do not contain the notice required by the statute. Under § 435.045.3, the prohibition against a debtor maintaining an action or defense except on a written agreement does not apply unless the written credit agreement contains the following language in ten-point boldface type:
Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrowers(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.
R.S.Mo. § 435.045.3(1).
GE replies that Financing Agreements executed by plaintiffs in connection with the transaction at issue contain the statutory language required by § 435.045.3, and that the Notes incorporate the terms of the Financing Agreements. (See Def.'s Exs. A-D.) GE does not cite the provision of the Notes which incorporates the Financing Agreements.
It is undisputed the Notes themselves do not contain the statutory notice in question. *741 (See Pl.'s Exs. A-D.) Each Note states it "is issued pursuant to and is secured by that certain Financing Agreement of even date herewith and the various agreements executed in connection therewith ...", id. at 1, but the Court does not find language incorporating the terms of the Financing Agreements. The Financing Agreements (the "Agreements") contain provisions which state:
(1) the Agreements contain the entire agreement of the parties with respect to the Loan; (2) all prior agreements, commitments, understandings, warranties and negotiations in connection herewith, if any, are hereby merged into this Agreement; and (3) no oral representations shall in any manner modify or explain any of the terms and conditions herein.
See Agreements, § 8.7(b)(1)-(3) at 13. Paragraph 8.7(b)(3) of the Agreements also contains the statutory notice language required by § 435. 045.3(1), although it is not set forth in boldface ten-point type.
The Court concludes that the notice language as set forth in the Agreements sufficiently complies with the requirements of the statute. The Court first finds that the Notes and Agreements, together with other related documents, comprise the "written credit agreement" between the parties under § 432.045. These documents refer to each other and are also clearly related to each other as integral parts of the parties' financing arrangement. Under Missouri law, several documents in combination may supply the essential terms of a contract, where the documents refer to each other or their contents show they are clearly related. See Smith v. International Paper Co., 87 F.3d 245, 247 (8th Cir.1996) (discussing requirements of a writing to satisfy Missouri statute of frauds); Vess Beverages, Inc. v. Paddington Corp., 941 F.2d 651, 654 (8th Cir.1991) (same) Thus, the written credit agreement between the parties contains the statutory notice language.
The fact that the statutory notice language is not in ten-point bold type does not require a different result. To date, no Missouri decisions interpret and apply this aspect of § 432.035. There is no legislative history available to aid in interpretation of the statute. Under these circumstances, the Court must attempt to determine what Missouri's highest court would conclude if faced with this question. See Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Courts in other states with similar credit agreement statutes have explained the purpose of these statutes is to limit lender liability claims based on assertions of breach of oral agreements to lend, to refinance or to forbear from enforcing contractual remedies, by requiring a writing as a prerequisite for a debtor to sue a lender. The statutes are intended to discourage lender liability litigation and promote certainty in credit agreements. See Whitney Nat'l Bank v. Rockwell, 661 So.2d 1325, 1329 (La.1995); Brown v. Founders Bank and Trust Co., 890 P.2d 855, 862 (Okla.1994). "The goal [of credit agreement statutes] was `to prevent bank customers from bringing baseless lender liability claims against banks alleging breaches of undocumented side agreements between the customer and one or more bank officers.'" Id. at 1330 (citation omitted)[1]; see also Rural Am. Bank of Greenwald v. Herickhoff, 485 N.W.2d 702 (Minn.1992) (stating that the Minnesota credit agreement statute was enacted to protect lenders from having to litigate claims of oral promises to renew agricultural loans).[2] In addition, Missouri law has long recognized that a party signing *742 an agreement has a duty to read it. Farmland Industries, Inc. v. Bittner, 920 S.W.2d 581, 584 (Mo.App.1996) (citing Sanger v. Yellow Cab Co., 486 S.W.2d 477, 481 (Mo.1972)). Absent a showing of fraud, a party is charged with the knowledge of a contract it signs. Id. (citing Mason v. Mason, 873 S.W.2d 631, 634-35 (Mo.App.1994)).
Given the purpose of credit agreement statutes, and considering that this case concerns a sophisticated multi-million dollar financial transaction between business entities, the Court concludes that substantial compliance with the statute is sufficient and the failure to place the statutory notice in bold type does not preclude application of the statute.
The Court also concludes, contrary to plaintiffs, argument, that the purported oral agreement between the parties constitutes a "credit agreement" within the meaning of the statute. Under Missouri rules of statutory construction, "Words standing alone are to be interpreted according to their ordinary meaning". St. Louis Country Club v. Administrative Hearing Comm'n of Mo., 657 S.W.2d 614, 617 (Mo.banc 1983) (citation omitted). The loan documents in this case clearly require the payment of a prepayment premium. Applying the ordinary meaning of the statutory language, plaintiffs, claim that GE agreed to forbear from collecting prepayment premiums constitutes an agreement to forbear repayment of money and/or a financial accommodation under the statute's definition of a credit agreement. See § 435.045.1.
This interpretation is also consistent with the decision of other courts which have broadly interpreted the terms "lend or forbear", "otherwise extend credit" or "make other financial accommodations" in similar credit agreement statutes. See, e.g., Rural Am. Bank of Greenwald, 485 N.W.2d at 705-06 (holding that an alleged oral agreement to apply crop proceeds to one loan in preference to a second loan was a financial accommodation and therefore a credit agreement); Carlson v. Estes, 458 N.W.2d 123, 128 (Minn.App. 1990) (an alleged oral agreement to reduce a loan's interest rate was a promise to forbear repayment of money and a financial accommodation, and was a credit agreement required to be in writing to be enforceable); Becker v. First Am. State Bank of Redwood Falls, 420 N.W.2d 239, 240 (Minn.App.1988) (an alleged oral agreement to continue financing a business if the business sold some of its assets was an agreement to lend and thus a credit agreement); see also Whitney Nat'l Bank v. Rockwell, 661 So.2d at 1332 (an alleged oral agreement by a bank to accept interest-only payments for a period of years and then amortize the payments over a period of years was an agreement to forbear repayment and to make financial accommodations, which could not be enforced in an action for damages unless the agreement was in writing).
Plaintiffs also argue for the first time in their memorandum in opposition that the alleged oral agreement to waive prepayment premiums constitutes an "oral termination" of the Financing Agreements, and contend that under Missouri law, a contract may be rescinded or terminated orally. The cases upon which plaintiffs rely are distinguishable, as they concern the rule that executory contracts for the purchase of land may be rescinded orally, even if the rescinded contract was required to be in writing under the statute of frauds. See Farmland Industries, Inc., 920 S.W.2d at 584; Smith v. Mohan, 723 S.W.2d 94, 98 (Mo.App.1987); Gee v. Nieberg, 501 S.W.2d 542, 544 (Mo.App. 1973). The rule set forth in these decisions is limited to the context of executory land contracts, and therefore plaintiffs may not rely on the theory of an oral termination of their agreements with GE.
Finally, the Court rejects plaintiffs' argument that the doctrine of promissory estoppel prevents GE from denying the existence of the oral agreement with plaintiffs, or from asserting the statute of frauds as a defense. Promissory estoppel is an equitable doctrine which is not applicable to an action at law for money damages. See Haugland v. Parsons, 863 S.W.2d 609, 610 (Mo.App.1992); Whaling v. Little Piney Oil Co., 623 S.W.2d 589, 592 (Mo.App.1981) (citing Alonzo v. Laubert, 418 S.W.2d 94, 97 (Mo.1967)). Plaintiffs seek only damages in *743 their breach of contract count. Promissory estoppel is therefore inapplicable to their claim. Further, the merger provisions in the Financing Agreements state inter alia that "no oral representations shall in any manner modify or explain any of the terms and conditions" thereof. See Financing Agreements, ¶ B.7(b)(1)-(3). These provisions operate to preclude any application of promissory estoppel. See American Realty Trust, Inc. v. First Bank of Missouri, Gladstone, 902 S.W.2d 884, 887 (Mo.App.1995).
Accordingly, the Court concludes that plaintiffs, breach of contract claim in Count IV is barred by § 435.045. GE's motion to dismiss Count IV, construed as a motion for summary judgment, should be granted.
B. Remaining Counts. GE contends that plaintiffs' remaining claims are all based on the alleged oral agreement by GE to waive prepayment premiums, and as such are also precluded by the credit agreement statute of frauds, § 435.045. In the alternative, GE contends that plaintiffs fail to state a claim upon which relief can be granted in each count. Plaintiffs dispute that the credit agreement statute of frauds applies to this matter at all, and assert that each of these counts validly states a claim. The remaining counts assert claims based on theories of negligent misrepresentation, fraud, detrimental reliance, and quantum meruit. Each count is based on the same operative facts, specifically the allegation of an oral agreement by GE to waive prepayment penalties.
GE's principal contention presents an issue which has yet to be addressed by Missouri's courts. The Court has reviewed caselaw from other jurisdictions having credit agreement statutes. The majority of the cases hold that a credit agreement statute of frauds bars all actions based on an alleged oral credit agreement, regardless of the theory of recovery asserted.[3] The reasoning behind these decisions is that "to accept such allegations as affording recovery, grounded in concepts other than breach of contract, simply provides an easy avenue for resourceful attorneys to circumvent the [credit agreement] statute, thus defeating the legislative intent to prohibit claims stemming from hard-to-defend oral representations." Fleming Irrigation, Inc. v. Pioneer Bank & Trust Co., 661 So.2d 1035, 1039 (La.App.1995)[4]. See, e.g., Klem v. First Nat'l Bank of Chicago, 275 Ill.App.3d 64, 211 Ill.Dec. 828, 655 N.E.2d 1211, 1213 (1995) (Illinois credit agreement statute precluded fraud claim based on alleged oral agreement); Fleming, 661 So.2d at 1039 (Louisiana credit agreement statute barred action for breach of contract, tortious and fraudulent misrepresentation, negligence and promissory estoppel based on alleged oral agreement); First Nat'l Bank in Staunton v. McBride Chevrolet, Inc., 267 Ill.App.3d 367, 204 Ill.Dec. 676, 642 N.E.2d 138, 142 (1994) (Illinois credit agreement statute bars any type of action "on or in any way related" to an oral credit agreement, including fraud, tortious interference with business relationship, promissory estoppel, breach of fiduciary duty, wrongful dishonor, and breach of implied covenant of good faith and fair dealing); Norwest Bank Lakewood, Nat'l Ass'n v. GCC Partnership, 886 P.2d 299, 302 (Colo.App.1994) (Colorado credit agreement statute barred counterclaims for breach of fiduciary duty, negligent misrepresentation and fraudulent misrepresentation, based on alleged oral agreement).[5]
*744 The Court finds the reasoning of these decisions persuasive, and concludes the Missouri Supreme Court would hold that the Missouri credit agreement statute bars all actions based on an alleged oral credit agreement. Consequently, GE's motion to dismiss the remaining counts of plaintiffs' complaint, construed as a motion for summary judgment, should be granted. As a result, the Court need not address GE's alternative argument that the remaining counts fail to state a claim upon which relief can be granted.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion to dismiss, construed as a motion for summary judgment, is GRANTED. [Doc. 7]
An appropriate judgment will accompany this memorandum and order.

JUDGMENT
In accordance with the memorandum and order of this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant General Electric Capital Corporation's motion to dismiss, construed as a motion for summary judgment, is granted.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that judgment is entered in favor of defendant and against plaintiffs.
Costs are assessed against plaintiffs.
NOTES
[1] Louisiana's credit agreement statute, La.Rev. Stat. 6:1121, is comparable to the Missouri credit agreement statute. The Louisiana statute defines a "credit agreement" as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit or make other financial accommodation", and provides that a "debtor shall not maintain an action on a credit agreement, unless the agreement is in writing, expresses consideration, sets forth relevant terms and conditions, and is signed by the creditor and debtor." La.Rev.Stat. 6:1122.
[2] The Minnesota statute is not limited to farm-related transactions. Minn.State § 513.33. The statute defines "credit agreement" as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." § 513.33 subd. 1(1). The statute provides, "A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." § 513.33 subd. 2.
[3] Courts interpreting and applying credit agreement statutes have often permitted a debtor to maintain affirmative defenses to alleged oral agreements using theories such as promissory estoppel, equitable estoppel and fraud, while precluding direct actions on these theories. See, e.g., Pako Corp. v. Citytrust, 109 B.R. 368, 377-79 (D.Minn.1989) (applying Minnesota law); Maynard v. Central Nat'l Bank, 640 So.2d 1212 (Fla. App.1994).
[4] In a subsequent case, the Louisiana Supreme Court declined to adopt a blanket rule that the credit agreement statute precludes all actions for damages arising from oral credit agreements regarding of the theory of recovery asserted, where the limited allegations in the case before it did not require the court to address the issue. See Whitney Nat'l Bank v. Rockwell, 661 So.2d 1325, 1332, n. 6 (La.1995).
[5] But cf. Brown v. Founders Bank and Trust Co., 890 P.2d 855, 864 (Okla.1994) (Oklahoma credit agreement statute did not bar fraud claim based on alleged oral agreement, although the court noted that its "research reveals no case in which courts have allowed a borrower to avoid the statute of frauds for credit agreements by alleging fraud." Id. at 861.)