CLINTON NATIONAL BANK, Appellee,

v.

C. Larry SAUCIER a/k/a Larry Saucier, a/k/a Clarence Saucier and Computer Alternatives, Inc., Appellants.

No. 97–633.

Supreme Court of Iowa.

July 1, 1998.

Peter C. Riley of Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

Charles E. Miller and Judith L. Herrmann of Lane & Waterman, Davenport, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The question here is whether Iowa Code section 535.17 (1995) prevents enforcement of an alleged oral agreement between a bank and a customer to honor overdrafts drawn on the customer's checking account. The district court held that it did. Accordingly, the court granted the bank's motion for summary judgment and dismissed the customer's counterclaim against the bank for breach of the alleged agreement. We affirm.

## I. Background facts and proceedings.

The present dispute began when plaintiff Clinton National Bank (Bank) filed a petition at law in district court, naming Computer Alternatives, Inc., (CA) and Larry Saucier as defendants (hereinafter collectively referred to as defendants). In the petition, the Bank asserted that CA had defaulted on five promissory notes guaranteed by CA's president, defendant Larry Saucier. The Bank amended its petition and added a count seeking to collect on another promissory note on which Saucier was in default.

In response, CA and Saucier filed an answer and a counterclaim, which asserted claims for breach of contract, interference with contract, misrepresentation and defamation in connection with the Bank's action in refusing to honor overdrafts on defendants' checking accounts. The breach of contract claim was based on an alleged oral agreement between Saucier and bank officer Tom Fullerton wherein the Bank agreed to honor overdrafts so long as the total amount was less than the amount of accounts receivable certified to the Bank. Saucier asserted that this agreement was confirmed by the Bank's past course of conduct in honoring defendants' overdrafts.

The Bank filed a summary judgment motion concerning the claims in its petition. Pursuant to an agreement between the parties, the district court sustained the motion and granted judgment to the plaintiff Bank as to the making, execution and calculation of the unpaid amounts due on defendants' promissory notes. The court's ruling stated that the Bank could not execute on the judgment until the defendants' counterclaim had been decided.

The Bank filed a second motion for summary judgment concerning the allegations asserted in defendants' counterclaim. The district court granted the Bank's motion for summary judgment, based on its conclusion that Iowa Code section 535.17(1) requires that any alleged agreement to honor overdrafts be in writing. The court reasoned that even if Fullerton made representations to Saucier that the Bank would honor CA's overdrafts, these representations were never put into writing and thus any alleged agreement regarding overdrafts was not enforceable under section 535.17(1). Since defendants failed to show that any such written agreement existed, the Bank had no duty to honor CA's overdrafts.

On appeal, defendants renew their contention that they had an agreement with the Bank concerning overdrafts and that defendants sustained injury due to the Bank's actions, but defendants raise no issue concerning their claims for defamation, interference with contract, and misrepresentation.

## II. Standard of review.

Our review of a grant or denial of summary judgment is at law. Iowa R.App. P. 4; *Gabrilson v. Flynn,* 554 N.W.2d 267, 270 (Iowa 1996). Summary judgment is only appropriate when no genuine issue of material

fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 201 (Iowa 1997). To determine whether there is a genuine issue of material fact, the court must examine the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 237(c). The record here consists of the pleadings, affidavits and exhibits. We review the record in the light most favorable to the party opposing summary judgment; in this sense, we consider a motion for summary judgment as we would a motion for directed verdict. *Smith v. CRST Int'l, Inc.*, 553 N.W.2d 890, 893 (Iowa 1996).

The moving party may establish a right to summary judgment by establishing the limits of the other party's proof. *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996). If those limits of proof reveal that the resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment.[1] *Id.*; *see also Griglione v. Martin*, 525 N.W.2d 810, 813 (Iowa 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 274 (1986)).

### III. Iowa Code section 535.17.

Defendants contend that the district court erred in granting summary judgment in favor of the Bank concerning their breach of contract counterclaim. Specifically, defendants contend that the district court erred in concluding that Iowa Code section 535.17 requires that an agreement to honor overdrafts be in writing to be enforceable. After reviewing the record in a light most favor-

able to defendants, we conclude that the district court correctly applied Iowa Code section 535.17.

▮ The relationship between a bank and its customer is based on contract. *See Petersen v. Carstensen*, 249 N.W.2d 622, 624 (Iowa 1977) (bank deposit creates valid contract between bank and depositor). Absent an express agreement of the parties to the contrary, the provisions of Article 4 of the Uniform Commercial Code (UCC) governing bank deposits and collections are made express provisions of the depositor's contract with the bank. Iowa Code § 554.4103(1); 10 Am.Jur.2d *Banks & Financial Institutions* § 715 (1997). Iowa adopted the provisions of Article 4 of the UCC in 1965. *See* 1965 Iowa Acts ch. 413, § 4104. Those provisions are codified at Iowa Code sections 554.4101 through 554.4504.

At the time Saucier and CA entered into the relationship with the Bank, Saucier, in behalf of defendants, and the Bank signed an agreement entitled Corporate Depository Resolution. This agreement included the following paragraph:

> [T]o the extent that any *Withdrawal Orders* executed by the persons designated herein ... exceed collected balances of this Corporation on deposit with the Bank, *the Bank may, in its sole discretion* but without any obligation on its part to do so, and without notice to this Corporation *honor such Withdrawal Orders*, and to the extent that the Bank so elects, this Corporation hereby agrees that such excess payment shall constitute an obligation and liability of this Corporation to the Bank....

---

1. In *Griglione v. Martin*, we noted that in order to establish summary judgment in this manner, the moving party must demonstrate that the proof available to the resisting party at trial will be limited to evidence that will not be sufficient to sustain a right to relief. 525 N.W.2d 810, 814 (Iowa 1994). We expressly stated:

   > Such limits must be established through procedural devices separate and apart from the summary judgment motion, such as statutory limitations on designating expert witnesses, see Iowa Code § 668.11 (1993), concessions on proof in answers to interrogatories filed by the resisting party, or pretrial orders limiting proof at trial to that evidence disclosed through dis-

covery and closing the discovery process at a fixed time.

*Id.*

   In *Cox v. Jones*, 470 N.W.2d 23, 26 (Iowa 1991), for example, we upheld a grant of summary judgment in favor of a defendant physician in a medical malpractice case on the basis that the limits of plaintiffs' evidence was established when plaintiffs' expert was precluded from testifying, due to plaintiffs' failure to properly designate their expert witness within the statutorily required time. *See* Iowa Code § 668.11 (plaintiff shall designate expert within 180 days of defendant's answer).

(Emphasis added.) The term "withdrawal orders" as used in this agreement includes checks. According to the terms of this agreement, the Bank had no duty to honor CA's overdrafts, but could do so at its discretion.

Saucier contends that bank loan officer Tom Fullerton made representations to him that the Bank would honor defendants' overdrafts up to a percentage of CA's accounts receivable and that the Bank on occasion did honor CA's overdrafts. Defendants now contend that Fullerton's "representations" constitute an enforceable agreement and that the Bank breached this agreement by not honoring CA's overdrafts. The Bank denies that any such representations were made to Saucier or an agent of CA.

■ A. Before reaching the merits of this case, we first dispose of defendants' contention that Article 4 of the UCC, and not Iowa Code section 535.17, is the applicable law governing the issue in this appeal. Section 554.4402(1) states that a bank has no duty to pay an overdraft, unless otherwise agreed. This section does not specify whether the agreement must be in writing. Iowa Code section 535.17, enacted in 1990, *see* 1990 Iowa Acts ch. 1176, § 1, however, specifically states in subsection one that a credit agreement, which includes the honoring of overdrafts, must be in writing to be enforceable.

Our state is not bound as a matter of law by the provisions set forth in the UCC. The decision whether to adopt the UCC, in whole or in part, is up to each particular state. *See* 10 Am.Jur.2d *Banks & Financial Institutions* § 716 (1997) (UCC is not a regulatory statute and does not prescribe what constraints different jurisdictions may impose on the bank-customer relationship). Our legislature in 1990 chose to impose a more stringent requirement concerning a bank's duty to honor overdrafts than that called for by Article 4. Section 535.17(6) is further evidence of the legislature's intent with respect to written credit agreements, and states:

This section shall be interpreted and applied purposively to ensure that contract actions and defenses on credit agreements are supported by clear and certain written proof of the terms of such agreements to protect against fraud and to enhance the clear and predictable understanding of rights and duties under credit agreements.

Iowa Code § 535.17(6).

■ B. Having clarified what law governs, our next task is to apply it to the facts of this case. Iowa Code section 535.17(1) provides:

A *credit agreement* is not enforceable in contract law by way of action or defense by any party *unless a writing exists which contains all of the material terms of the agreement and is signed by the party against whom enforcement is sought.*

(Emphasis added.) The term "credit agreement" is defined as "any contract made or acquired by a lender to loan money, finance any transaction, or otherwise extend credit for any purpose, and includes all of the terms of the contract." Iowa Code § 535.17(5)(c).

■ Despite Saucier's contention to the contrary, under Iowa law payment by a bank of an overdraft is considered an unsecured loan, *see C & H Farm Serv. v. Farmers Sav. Bank,* 449 N.W.2d 866, 876 (Iowa 1989), and/or an extension of credit to a customer. *State v. Mullin,* 225 N.W.2d 305, 308 (Iowa 1975); *see also* 11 Am.Jur.2d *Banks & Financial Institutions* § 937 (1997). Defendants' alleged agreement with the Bank concerning overdrafts thus falls under the parameters of section 535.17(1). The statute clearly requires that an agreement concerning a bank's duty to honor overdrafts must be in writing to be enforceable. Therefore, assuming that the Bank did make oral statements to Saucier that it would honor defendants' overdrafts, such statements are immaterial because the law provides that such agreements must be in writing to be enforceable. Defendants do not assert any such written agreement exists here.

■ Furthermore, the fact that the Bank honored defendants' overdrafts in the past does not make the Bank obligated to honor future overdrafts. The rule is well-established that a bank has no duty to honor overdrafts, although it may have done so in the past. *See Orlich v. Rubio Sav. Bank of*

*Brighton,* 240 Iowa 1074, 1078, 38 N.W.2d 622, 624 (1949) (fact that bank paid overdrafts in past did not require bank to continue to honor future overdrafts); *Schaller v. Marine Nat'l Bank of Neenah,* 131 Wis.2d 389, 388 N.W.2d 645, 648–49 (Wis.Ct.App. 1986) (same). This is because the decision whether to honor an overdraft is a matter of discretion for the bank. *Schaller,* 388 N.W.2d at 648; *see also* 11 Am.Jur.2d *Banks & Financial Institutions* § 939 (1997) (whether to honor a check that creates an overdraft is a matter within the bank's discretion). As the Louisiana supreme court has said:

> A man may allow credit to another, if he sees fit to do so, but this does not oblige him to extend that credit at any and all times thereafter. The banker, like the butcher, the baker, and the grocer, extends credit when he thinks the customer is good for the amount of the credit, but he shuts it off when he thinks the customer is no longer able to respond to his obligations. . . .

*Canal Bank & Trust Co. v. Denny,* 172 La. 840, 135 So. 376, 377 (1931).

Since the Bank had no duty to honor defendants' overdrafts, the Bank likewise had no duty to give defendants notice that it would no longer honor defendants' overdrafts. *See Schaller,* 388 N.W.2d at 649 (since bank was not required to honor overdrafts, it had no obligation, absent contrary agreement, to give customer notice of potential overdraft); *see also* 11 Am.Jur.2d *Banks & Financial Institutions* § 939 (1997) (absent a promise to the contrary, the fact that bank honors depositor's overdrafts in the past does not give rise to duty to inform depositor that bank would not honor future overdrafts).

We conclude that the district court properly applied section 535.17(1) in determining that any agreement between the Bank and Saucier concerning overdrafts was not enforceable.

■ C. Defendants next contend that if section 535.17(1) requires that an agreement concerning overdrafts be in writing to be enforceable, then the Bank was required under subsections 535.17(2) and (3) to give defendants notice that the alleged oral agreement between Saucier and bank employee Fullerton was not enforceable. We reject this contention.[2]

As stated in section 535.17(5) a "credit agreement" means any contract made by a lender to loan money or otherwise extend credit for any purpose. We stated above that payment of an overdraft is considered an extension of credit to a customer. *Mullin,* 225 N.W.2d at 308. The alleged agreement, whereby the Bank would honor defendants' overdrafts, was a "credit agreement."

Thus, the "credit agreement," as alleged by defendants, is not enforceable unless a writing exists that contains all the material terms of the agreement and is signed by the party, the Bank, against whom enforcement is sought. Iowa Code § 535.17(1). With respect to honoring overdrafts, the Corporate Depository Resolution stated that the Bank would honor overdrafts only at its discretion. This agreement was signed by both parties

---

2. Section 535.17(2) provides:

Unless otherwise expressly agreed in writing, a modification of a credit agreement which occurs after the person asserting the modification has been notified in writing that oral or implied modifications to the credit agreement are unenforceable and should not be relied upon, is not enforceable in contract law by way of action or defense by any party unless a writing exists containing the material terms of the modification and is signed by the party against whom enforcement is sought. *This notification can be included among the terms of a credit agreement,* can be included on a separate form or together with other disclosures that are provided when the agreement is made, or can be given wholly apart from the agreement and at any time after the agreement has been made. To be effective, the notification and its language must be conspicuous. A person who gives a notification is bound by it to the same extent as the person notified. A notification with respect to any credit agreement is effective with respect to all other credit agreements then in effect between the parties if the notification conspicuously so provides. When a modification is required by this section to be in writing and signed, such requirement cannot be modified except by clear and explicit language in a writing signed by the person against whom the modification is to be enforced.

(Emphasis added.)

and thus constitutes a credit agreement under section 535.17(1). Under this credit agreement, the Bank had no affirmative duty to honor overdrafts but could do so at its discretion.

The alleged oral agreement between Fullerton and Saucier to honor defendants' overdrafts was obviously not put into writing. Defendants point to no other written credit agreements in the record that modify the Bank's duty concerning overdrafts as set forth in the Corporate Depository Resolution.

Thus, under subsection 535.17(2), defendants never had an enforceable "credit agreement" with the Bank whereby the Bank agreed to honor defendants' overdrafts and therefore the Bank did not have to give defendants notice that any alleged oral agreement to honor overdrafts was unenforceable.

We also point out that Saucier and CA did receive notification, containing language almost identical to that set forth in subsection 535.17(3), each time Saucier signed a promissory note and that this notification expressly stated that it applied to any other credit agreements that defendants had with the Bank.[3] Defendants thus knew at the time Saucier executed the first note in 1994 and when several later notes were signed that any modification of the Corporate Depository Resolution concerning the Bank's duty to honor overdrafts had to be in writing to be enforceable. We conclude that subsections 535.17(2) and (3) were adequately complied with by the Bank.

We also conclude that Iowa Code section 535.17(6) controls over any ambiguity in the provisions of section 535.17 and clearly requires that any alleged credit agreements must be in writing to be enforceable "to ensure that contract actions and defenses on credit agreements are supported by clear and certain written proof of the terms of such agreements to protect against fraud and to enhance the clear and predictable understanding of rights and duties under credit agreements." Iowa Code § 535.17(6).

We believe that section 535.17 was intended to preclude claims such as those asserted by defendants in their counterclaim.

■■■ Section 535.17 precludes any evidence by defendants of an alleged oral agreement whereby the Bank would honor defendants' overdrafts. Accordingly, the district court properly granted summary judgment to plaintiff concerning defendants' counterclaim.

## IV. Disposition.

We conclude that Iowa Code section 535.17 requires that any alleged agreement with a bank to honor overdrafts must be in writing to be enforceable. Defendants did not have a written agreement with the Bank whereby the Bank had the duty to honor any overdrafts drawn against defendants' account. The district court therefore properly granted summary judgment in favor of the Bank as to defendants' breach of contract counterclaim. We affirm the judgment of the district court.

**AFFIRMED.**

---

3. Each promissory note included the following paragraph, set off in bold-type print:

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. BORROWER MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT. *THIS NOTICE ALSO APPLIES TO ANY OTHER CREDIT AGREEMENTS (EXCEPT EXEMPT TRANSACTIONS) NOW IN EFFECT BETWEEN YOU AND THIS LENDER.*