# IN THE COURT OF APPEALS OF IOWA

No. 18-1428
Filed September 25, 2019

JACQUELINE GEIGER and BRUCE TRACY,
      Plaintiffs-Appellants,

vs.

PEOPLES TRUST AND SAVINGS BANK, CHRIS GOERDT and COUNTRY BANCORPORATION,
      Defendants-Appellees.
_____

Appeal from the Iowa District Court for Washington County, Joel D. Yates, Judge.

Plaintiffs appeal from the district court's grant of defendants' motions for summary judgment on their claims against a bank and bank president for fraudulent misrepresentation and interference with contract. **AFFIRMED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Matthew Preston of Brady, Preston & Gronlund PC, Cedar Rapids, for appellees Peoples Trust and Savings Bank and Country Bancorporation.

Raymond R. Rinkol Jr. of Bradley & Riley PC, Cedar Rapids, for appellee Chris Goerdt.

Heard by Doyle, P.J., Blane, S.J.* and Lloyd, S.J.*

*Senior judges assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Plaintiffs brought an action for fraudulent misrepresentation and interference with contract when a bank allegedly breached an agreement to lend them money. The plaintiffs claimed this damaged their limousine business and a yet-to-be-developed wedding venue. The district court granted the bank, its holding company, and the bank's former president's motions for summary judgment because the plaintiffs' claims were barred by the statutes of frauds found in Iowa Code sections 535.17 and 622.32 (2017) and because it concluded the plaintiffs could not prove damages. Plaintiffs appeal contending the district court misapplied these statutes or an unsigned document authored by the bank president takes their claims outside the statutes of frauds.

We conclude that plaintiffs' claims were a greater stretch than one of their limousines and that the district court correctly granted defendants summary judgment.

## I. BACKGROUND FACTS AND PROCEEDINGS

The plaintiffs, Jacqueline Geiger and Bruce Tracy, allege Peoples Trust and Savings Bank (Peoples Bank) and its then-president, Chris Goerdt, made either a written or oral agreement to lend them money to develop property in Illinois into a wedding venue and event center, to be named Prairie Rose Event Center. Peoples Bank has its headquarters in Washington County, Iowa.

Tracy once operated a long-held family farm in Illinois and currently operates a limousine business, Classic Thunder Limousine, in Riverside, Iowa. Tracy has "unresolved credit issues" that prevent him from obtaining a loan,

including tax liens, bankruptcy, and repossessions. Tracy had not filed personal or business income tax returns for seventeen years.

Tracy had sold his Illinois farm to his friend and investor, William Reichow. Reichow, Tracy, and Geiger agreed that Geiger should take out a loan to purchase the farm from Reichow, which Geiger and Tracy could then, with improvements, operate as the events center. Tracy was to run the financial end of the business. Geiger would hold the title in the farm and be named in all business documents. She would also run the operations side of the business. Meanwhile, Geiger purchased Classic Thunder, which Tracy continued to operate.

Goerdt, president of Peoples Bank, learned of the planned event center in 2014. He became familiar with Geiger, Tracy, and Reichow. Tracy testified that in August 2015, Goerdt called him and Geiger to his office at the bank and presented them with a document labeled, "Easy & Simple Solution" (ESS). The document, handwritten on lined notebook paper, appears to set out a plan of action for refinancing the farm and Classic Thunder. Tracy testified Goerdt induced them to take out the loans for the farm land and Classic Thunder by saying they were "recommend[ed] from the FDIC" (Federal Deposit Insurance Corporation) and "already ha[d] the concurrence . . . [of] the bank board." Later on, in interrogatories and depositions, Geiger and Tracy reported they understood the document and their conversation with Goerdt as an agreement for Peoples Bank to lend them money to develop Prairie Rose Events Center.

Geiger and Tracy executed two promissory notes with Peoples Bank. One note for $240,000 was against the debt in Classic Thunder and named Tracy as the borrower, even though he no longer had an interest in the business. With a

second note of $252,000, Geiger bought the farm from Reichow. Geiger used the farm as collateral for the second note. Tracy was no longer owner of either the limousine business or the farm.[1]

In December 2015, Goerdt resigned his position at the bank. In his resignation letter, he pointed to some organizational and management complaints with the bank's holding company, Country Bancorporation. In July 2016, Peoples Bank sent Tracy an acceleration notice telling him he was in default on the loans and demanding full payment. When it also became clear to Geiger and Tracy they were not going to receive a loan to develop the farm into the Prairie Rose Event Center, they filed a petition at law alleging fraudulent misrepresentation and interference with existing and prospective contracts and seeking a temporary injunction to prohibit Peoples Bank from initiating any proceedings against them in Illinois on the defaulted notes.

Geiger and Tracy specifically claimed the ESS document and the conversation they had with Goerdt constitute a written and oral agreement for the bank to lend them enough money to fund the development of Prairie Rose. They joined Country Bancorporation as a defendant based on negligence in hiring, supervising, and retaining Goerdt at Peoples Bank. As damages, Geiger and Tracy alleged an "offset or judgment for any amount owed to Peoples" from the

---

[1] In his deposition, Tracy admitted he has no claim in this case related to Prairie Rose because he does not own the land or the business. He would not, therefore, claim any damages related to lost profits from Prairie Rose due to the bank's claimed failure to provide funding. He was only the business manager for Geiger, the owner. Tracy's understanding was that his only involvement in the case was that the bank named him the borrower in the loan regarding Classic Thunder.

defaulted loans, lost profits from the unfinished Prairie Rose project, and lost profits from the limousine business.

The defendants filed for summary judgment, asserting several affirmative defenses. Following a hearing, the trial court granted Goerdt and Peoples Bank's motions for summary judgment, which the court found rendered the claims against Country Bancorporation moot. Although Geiger and Tracy sought enlargement of the findings, the district court denied their motion. Geiger and Tracy appeal.

## II. SCOPE AND STANDARD OF REVIEW

"Our review of a district court ruling on a motion for summary judgment is for correction of errors at law." *Albaugh v. The Reserve*, 930 N.W.2d 676, 682 (Iowa 2019). "Summary judgment is proper when the moving party has shown there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quotations and citations omitted). There is a "genuine issue of material fact" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). "We view the evidence in the light most favorable to the nonmoving party." *UE Local 893/IUP v. State*, 928 N.W.2d 51, 59 (Iowa 2019) (citation omitted). "The court must consider . . . every legitimate inference that can be reasonably deduced from the record." *Id.* (quotations and citations omitted).

## III. ANALYSIS

On the motions for summary judgment, the district court found there were no genuine issues of material fact and the defendants were entitled to judgment on three independent grounds, each comprising a complete defense for the defendants. Since we agree with the district court as to the two bases found in the

statutes of frauds, we find no need to address the third ground, failure of proof of damages.

### A. Whether the trial court correctly determined the claims were barred by Iowa Code sections 535.17 and 622.32.

We start by noting the parties do not dispute Geiger was the proposed borrower in this alleged loan transaction to fund Prairie Rose. Tracy acknowledged in his deposition, because of his lack of ownership and his financial history, he was not going to be named in the Prairie Rose loan or business documents.

Turning next to the claims, we assess whether Iowa's statute-of-frauds provisions prevent raising the plaintiffs' claims as torts.[2] Iowa Code section 535.17(1) provides, "A credit agreement is not enforceable in contract law by way of action or defense by any party unless a writing exists which contains all of the material terms of the agreement and is signed by the party against whom enforcement is sought." The district court found, "The requirements of Iowa Code [s]ection 535.17 have not been established." Geiger testified the agreement was verbal. This failed to meet the requirement that the agreement be in writing and signed. So the court held the oral credit agreement was not enforceable.

The district court also determined Iowa Code section 622.32(4) barred Geiger and Tracy's claims. That section provides, "[N]o evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by the party's authorized agent: . . . Those that are not to be performed

---

[2] We assume without deciding that "interference with contract and business" is a valid tort claim. The plaintiffs presented no evidence of any contract allegedly interfered with, other than their own with Peoples Bank, or business prospects they lost. Tracy testified some members of the public had approached him about Prairie Rose hosting their event but did not produce any contracts, agreements, invoices, estimates, or similar documentation.

within one year from the making thereof." In her deposition, Geiger admitted the loan agreement could not be performed within one year from when made:

> Q: And that loan, whatever agreement there was to fulfill that loan was, no matter what, that was going to take place over the course of more than the year, correct? A: Correct.
> Q: There was no way that the understanding you had reached with any of these Defendants orally would be fulfilled within one year, am I correct? A: Correct, because it was in phases.

On appeal, Geiger and Tracy argue sections 535.17 and 622.32 do not apply to their tort claims, only claims and defenses in contract law.

*1. Section 622.32 performance within one year*

Dealing first with the second statute of frauds provision, Iowa Code section 622.32(4) requires the plaintiffs to produce a written and signed document as competent evidence of the agreement existing over one year. The plaintiffs assert a written agreement does exist—the ESS document. However, the ESS does not mention or set out an agreement regarding Prairie Rose or contain signatures. Therefore, it does not satisfy the section 622.32(4) requirements. The agreement here was oral only, at best.

Geiger and Tracy respond, "The statute does not apply to contracts which are likely to be performed over a period of more than one year. Rather, it only applies to contracts that will not, under any circumstances, be performable in one year." *See Pavone v. Kirke*, 801 N.W.2d 477, 491 (Iowa 2011) ("In deciding whether a particular oral contract is governed by the performance within one year rule, the question is not whether performance must actually be completed within a year but whether it would be possible to perform the contract within that time frame. Put another way, contracts of uncertain duration are simply excluded; the provision

covers only those contracts whose performance cannot possibly be completed within a year." (Cleaned up for readability.)).

We agree with Geiger and Tracy's interpretation of the "within one year" language. But the evidence presented by Geiger herself in deposition was that "[t]here was no way" the contract "would be fulfilled within one year." On the undisputed evidence, section 622.32(4) applies, and the plaintiffs cannot enforce the oral agreement. *See id.* ("The Iowa statute of frauds does not render oral promises invalid. Rather the statute is a rule of evidence that renders incompetent oral proof of such promises." (quoting *Olson v. Nextel Partners, Inc.*, 317 F. Supp. 2d 972, 978 (S.D. Iowa 2004))).

*2. Section 535.17 credit agreements in writing*

Returning to the first claim, Geiger and Tracy point out section 535.17 defines "credit agreement" as "any contract made or acquired by a lender to loan money, finance any transaction, or otherwise extend credit for any purpose." Iowa Code § 535.17(5)(c). A "contract" is in the statute as "a promise or set of promises for the breach of which the law would give a remedy or the performance of which the law would recognize a duty, and includes promissory obligations based on instruments and similar documents or on the contract doctrine of promissory estoppel." *Id.* § 535.17(5)(b). They argue the statute's omission of the doctrine of equitable estoppel, what they consider as "the defensive side of an affirmative claim of fraudulent misrepresentation," suggests the legislature did not include misrepresentation claims within section 535.17.

The district court disagreed with Geiger and Tracy's characterization of section 535.17 finding,

> The fact that Plaintiffs have cast their claims as fraud and interference with contracts does not save them from the requirements of Iowa Code [s]ection 535.17. Iowa Code [s]ection 535.17 has its own specific definitions of "credit agreement," "contract," and "lender," which are broad and cover any promise or set of promises made by a lender or person primarily in the business of loaning money to finance any transaction or otherwise extend credit for any purpose the breach of which the law would set forth a remedy.

The alleged fraudulent conduct is an inducement to a loan agreement the defendants later broke. In other words, the defendants broke a promise to lend them money. They want to recover damages resulting from this broken promise. Thus, they are seeking to enforce "a promise . . . for the breach of which the law would give a remedy." The district court was correct that the definition of "contract" is broad under section 535.17. It encompasses the agreement Geiger and Tracy seek to enforce.

Geiger and Tracy try to end run section 535.17 by arguing their claims sound in tort, not contract. They emphasize the language "[a] credit agreement is not enforceable *in contract law*." Iowa Code § 535.17(1) (emphasis added). The district court impliedly rejected this argument. It refused to allow the plaintiffs to "cast their claims as fraud and interference with contracts."

We must carefully examine what the plaintiffs are claiming caused their damages. In her deposition, Geiger explained the plaintiffs' claims: "The bank in Riverside, when we started out it was to fund the Prairie Rose Event Center . . . and they never went through with that. They never—they stopped financing . . . ." Their amended complaint also describes the alleged "fraudulent misrepresentation":

> The statements that were made to Geiger and Tracy in connection with financing, including but not limited to the statements concerning the Skinner appraisals, all of the statements concerning the alleged refinancing with Sweeting, and the promises in connection with the August 21, 2015 handwritten agreement [the ESS document] were false.

In other words, the defendants made a false promise to perform. The "interference with contract and business" claim simply states, "The actions of Defendant Goerdt constitute an interference with existing and prospective contracts that Geiger and Tracy had." Besides communicating about the two promissory notes, Geiger, Tracy, and Goerdt talked about getting more loans to develop and operate Prairie Rose. But nowhere were those discussions reduced to writing.

The question before us, then, is whether the statute of frauds applies to cut off a fraudulent misrepresentation claim that is based on an alleged oral contract. The defendants point to *Clinton National Bank v. Saucier*, 580 N.W.2d 717, 718 (Iowa 1998), where a bank sued to recover on several defaulted promissory notes. The debtor filed counterclaims alleging breach of contract, interference with contract, misrepresentation, and defamation. *Saucier*, 580 N.W.2d at 718. The debtor alleged the bank had made an oral agreement to honor overdrafts, and the bank's refusal to keep the agreement caused him damage. *Id.* The bank argued on summary judgment that section 535.17 applied to bar the claims because it required such agreements to be in writing. *Id.* The district court granted the bank summary judgment on this claim involving the overdrafts. *Id.* at 720. The bank also filed a second summary judgment to dismiss the debtors' counterclaims, which the district court also granted. *Id.* at 718. But the supreme court specifically noted in the opinion that the debtors had not appealed the district court summary

judgment on its counterclaims. *Id.* Thus, the supreme court did not directly address the issue before us here. Even so, the court wrote:

> We also conclude that Iowa Code section 535.17(6) controls over any ambiguity in the provisions of section 535.17 and clearly requires that any alleged credit agreements must be in writing to be enforceable "to ensure that contract actions and defenses on credit agreements are supported by clear and certain written proof of the terms of such agreements *to protect against fraud and to enhance the clear and predictable understanding of rights and duties under credit agreements.*"

*Id.* at 722 (emphasis added) (quoting Iowa Code § 535.17(6)).

Other than *Saucier*, we see no on-point Iowa case. Nonetheless, persuasive authority from other states with similar statutes shows the statute of frauds does cut off a tort claim based on an unenforceable contract. *See, e.g.*, *Dixon v. Countrywide Fin. Corp.*, 664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009) ("Florida courts consistently hold that the statute of frauds also serves to bar any claims that are premised on the same conduct and representations that were insufficient to form a contract and are merely derivative of the unsuccessful contract claim." (Cleaned up for readability.)); *see also Horseshoe Entm't, L.P., v. Gen. Elec. Capital Corp.*, 990 F. Supp. 737, 743 (E.D. Mo. 1997) (conducting a survey of other jurisdictions with credit agreement statutes and concluding, "The majority of the cases hold that a credit agreement statute of frauds bars all actions based on an alleged oral credit agreement, regardless of the theory of recovery asserted. The reasoning behind these decisions is that to accept such allegations as affording recovery, grounded in concepts other than breach of contract, simply provides an easy avenue for resourceful attorneys to circumvent the credit agreement statute, thus defeating the legislative intent to prohibit claims stemming

from hard-to-defend oral representations." (Cleaned up for readability.)); *Ohio Valley Plastics, Inc. v. Nat'l City Bank*, 687 N.E.2d 260, 264–65 (Ind. Ct. App. 1997) ("[T]he statute of frauds at issue in the present case applies broadly, even to an action upon an agreement with a creditor to enter into a new credit agreement. . . . Regardless of whether the present cause of action is labeled as a breach of contract, misrepresentation, fraud, deceit, promissory estoppel, its substance is that of an action upon an agreement by a bank to loan money. Therefore, the statute of frauds applies." (Cleaned up for readability.));.

We find this rationale persuasive and conclude the district court did not err in declining to allow the plaintiffs' end run by arguing their claims are torts. This "contract made . . . by a lender to loan money . . . or otherwise extend credit" was a "credit agreement" as defined in section 535.17(5). Thus, the provisions of section 535.17(1) apply. The plaintiffs must show a "writing" containing "all of the material terms of the agreement" along with signatures by the defendants to establish a contract existed in the first place. Geiger and Tracy cannot raise in tort what they cannot prove in contract: the existence of an enforceable contract.

Geiger and Tracy make the alternative argument the ESS document Goerdt handwrote was a "writing" satisfying the requirements of section 535.17. The district court rejected this argument too. The document lacked any of the "material terms of the agreement," signatures, and even the names of the parties.

The ESS document is a "writing," fair enough. But it is not a written agreement related to the funding of Prairie Rose. First, Geiger admitted there was no written agreement. She thought, "[I]t was pretty much just verbal." When

pressed for details, Geiger stated she simply assumed all the parties "were on the same page."

Second, Goerdt's handwritten document lacks any material terms of the agreement to lend money for Prairie Rose. It does not even mention Prairie Rose. And, third, it lacks a signature by any of the defendants or agents of the defendants. Even though the authenticity of the document is not in question—Goerdt agreed he handwrote the document—we reject Geiger and Tracy's suggestion that Goerdt's handwriting can stand in as his signature—he did not even write his name.[3]

We find no error of law in the court's ruling that there is no genuine issue of material fact about the nature of this agreement, in particular that it is not contained in any writing and not performable within a year. That is, since evidence of the claimed agreement is not admissible under the statute of frauds in either section

---

[3] Geiger and Tracy suggest because the bank extended the first two loans, there was an implied agreement to continue with further loans to fund Prairie Rose. The *Saucier* court addressed this question squarely noting in that case the bank had paid some overdrafts but stopped doing so and did not notify Saucier. 580 N.W.2d at 720–21. Nonetheless, the court said,

> [T]he fact that the Bank honored defendants' overdrafts in the past does not make the Bank obligated to honor future overdrafts. . . . [The bank] may allow credit to another, if [the bank] sees fit to do so, but this does not oblige [the bank] to extend that credit to any and all time thereafter. The banker, like the butcher, the baker, and the grocer, extends credit when [the bank] thinks the customer is good for the amount of the credit, but [the bank] shuts it off when [the bank] thinks the customer is no longer able to respond to [their] obligations.

*Id.* (cleaned up for readability). We cannot, therefore, read the discussions and written agreements for the first two notes as agreements for a further, future loan for the development of Prairie Rose.

535.17 or section 622.32, no reasonable jury could be convinced this agreement is enforceable. Thus, the defendants were entitled to judgment as a matter of law.[4]

### B. Whether Country Bancorporation was liable for the conduct of Goerdt.

Because we find Goerdt was entitled to summary judgment on both claims, we need not address whether Country Bancorporation was liable for his conduct.

### IV. CONCLUSION

For all the reasons enunciated above, we conclude the district court committed no error when it granted summary judgment to the defendants.

**AFFIRMED.**

---

[4] As their final prayer, Geiger and Tracy requested the district court stay any proceedings by the bank against them during these proceedings. Because the district court dismissed the other claims, it found the injunction was unnecessary and dismissed that request as well. We see no error in this logical disposition of the injunction request.