**Roy DIXON, Plaintiff,**

v.

**COUNTRYWIDE FINANCIAL CORPORATION, et al., Defendant.**

**Case No. 09–81021–CIV**

United States District Court, S.D. Florida.

Oct. 19, 2009.

Roy Dixon, pro se.

William P. Heller and Benjamin K. McComas, Akerman Senterfitt, for Countrywide.

---

### ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Countrywide Financial Corporation's Motion to Dismiss Second Amended Complaint [DE–22], filed herein on September 14, 2009. The Court has carefully considered the Motion, Plaintiff's Motion to Show Cause Why Defendants Motion to Dismiss Second Amended Complaint Should be Denied [DE–28][1], and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Roy Dixon ("Dixon") filed the above-styled action on May 14, 2009, in the Circuit Court in and for the Fifteenth Judicial Circuit, Palm Beach County, Florida, alleging claims against Countrywide Financial Corporation ("CFC"), Bank of America ("BAC") and Angelo R. Mozlio ("Mozlio"). CFC thereafter removed the action on July 10, 2009 [DE–1] since this Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship and the amount in controversy exceeds $75,000.00. On July 27, 2009, Plaintiff filed its Motion for Leave to File Amended Complaint [DE–6], which was granted by the Court on July 28, 2009 [DE–8]. The Amended Complaint named only Countrywide Home Loans, Inc. ("CHL") and Mozlio as Defendants. On August 11, 2009, CFC and BAC moved to dismiss Plaintiff's claims against them pursuant to Federal Rule of Federal Procedure 41(b) for failure to prosecute on the ground that Plaintiff's Amended Complaint did not name CFC or BAC or contain allegations against them. [DE–10]. This Court granted the motion in part, thereby dismissing the case as against BAC, but also allowed Plaintiff to file a second amended complaint. [DE–19].

The Second Amended Complaint tracks the allegations of the Amended Complaint but now asserts claims against CFC, CHL and Mozlio. However, there is no evidence that CHL or Mozlio have even been served with a summons or copy of the Second Amended Complaint. Indeed, Plaintiff admits that he has been unable to serve CHL. [DE–28, ¶ 5]. Accordingly, it appears to the Court that only CFC has been served in this matter and, therefore, the action is presently only at issue as to CFC.

In the Second Amended Complaint, Plaintiff alleges that he contacted Defen-

---

[1]. Noting that Plaintiff is *pro se,* the Court liberally construes Plaintiff's Motion to Show Cause Why Defendants Motion to Dismiss Second Amended Complaint Should be Denied [DE–28] as a Response in opposition to Defendant's Motion to Dismiss.

dants on January 20, 2007, regarding refinancing a subprime adjustable 5% interest rate loan that he held with Homecoming Financial Corporation that was due to balloon in December of 2007. Plaintiff alleges Defendants promised during the preparation of his uniform residential home loan application [DE–1, attachment to Ex. A] over the phone that Plaintiff would receive a fixed interest rate of 6.375% for 30 years and that the rate would be locked-in for 30–days from the application date. Plaintiff alleges that on January 25, 2007, Defendants came to Plaintiff's home to close on the loan and at that time advised Plaintiff that the loan would be changed from a 6.375% fixed interest rate to an adjustable interest only rate of 6.875% due to Plaintiff's credit score. Plaintiff further alleges he informed Defendants that their agreement was for 6.375% fixed interest rate for 30 years and that the rate was locked-in for 30–days. Plaintiff contends that Defendants deceived and misrepresented to Plaintiff that the 6.875% interest only adjustable rate would be reduced to a 6.250% fixed interest rate after six (6) years and that Plaintiff would not find a better rate. Nevertheless, Plaintiff claims he did not cancel the loan because he already paid the appraisal fees and Defendants represented that the 6.875% interest rate would be reduced in six (6) years.

Plaintiff alleges he subsequently made his mortgage payments for two years.

However, in January of 2009 Plaintiff notified Defendants that he needed a modification on his loan because he could not afford to make full monthly mortgage payments due to an increase in his taxes and insurance. Plaintiff alleges that he also asked Defendants if they had any records on file that stated the 6.875% interest rate would be reduced to a fixed interest rate of 6.250% after six (6) years. Plaintiff claims Defendants indicated they had no such records on file and that the rate of 6.875% would continue to increase after ten (10) years. Again, in April of 2009, Plaintiff alleges he notified Defendants that he could not afford to make his full monthly mortgage payments and that he needed a modification of his loan, yet purportedly Defendants did not respond. Consequently, Plaintiff claims Defendants ignored their own underwriting standards and mislead Plaintiff into accepting the 6.875% adjustable interest rate loan while concealing or misrepresenting that much larger rates would become due. Plaintiff alleges that Mozlio knew of and controlled the activities of CFC and its wholly-owned subsidiary CHL.

Plaintiff asserts four counts in his Second Amended Complaint.[2] Count I is for violation of FDUTPA, alleging that Defendants engaged in unfair and deceptive trade practices.[3] In Count II Plaintiff asserts a claim for negligent misrepresenta-

---

**2.** Although Plaintiff does not label his allegations related to Defendants purported violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as a count or request relief in regard to these allegations, the Court will nevertheless construe these allegations liberally and treat them as properly seeking relief.

**3.** Plaintiff does not allege any specific unfair or deceptive acts by CFC in regard to Plaintiff within its allegations related to the purported

violation of FDUTPA. Nonetheless, when liberally construing the *pro se* Plaintiff's Second Amended Complaint, it appears to the Court that Plaintiff is attempting to allege that CFC made false representations to Plaintiff in regard to Plaintiff's home loan that violated FDUTPA. The only representations in regard to Plaintiff's home loan that are alleged in the Second Amended Complaint relate to the purported promise of a fixed interest rate of 6.375% for 30 years and that the rate would be reduced to a 6.250% fixed interest rate

tion, alleging that Defendants misrepresented that Plaintiff would receive a fixed interest rate of 6.375%. Count III is for fraud and deceit, alleging that Defendants willfully misrepresented that Plaintiff would receive a fixed interest rate of 6.375% for 30 years and that the rate would be reduced to a 6.250% fixed interest rate after six (6) years. Finally, count IV is for breach of contract, whereby Plaintiff alleges that Defendants breached the purported contract to provide a 6.375% fixed interest rate contract for 30 years by changing the interest rate to a 6.875% adjustable interest rate on the date of loan closing. Thereafter, Defendant CFC filed the instant Motion on September 14, 2009. [DE–22].

## II. DISCUSSION

### A. Standard of Review

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate enough facts "to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero,* 963 F.2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint, and "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Id.* at n. 8 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

### B. Motion to Dismiss

In CFC's Motion to Dismiss, CFC argues that Plaintiff improperly seeks recovery from CFC while CFC played no role in the loan transaction. On the contrary, CFC was not a party to the lending relationship as clearly identified in the loan documents attached to the original complaint [4] which identify the lender as CHL and do not mention CFC. Consequently,

---

after six (6) years. Therefore, the Court construes Plaintiff's FDUTPA claim as relating to those allegations.

**4.** It appears that Plaintiff inadvertently failed to attached the loan documents to the Second Amended Complaint despite that they were attached to the original complaint, referenced in the Second Amended Complaint, and are relied upon by Plaintiff in his Motion to Show

Cause Why Defendants Motion to Dismiss Second Amended Complaint Should be Denied [DE–28]. Consequently, the Court concludes that it may properly consider these documents in ruling on the Motion to Dismiss as they are central to Plaintiff's claims, referenced in the Second Amended Complaint and are not in dispute. *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997).

because CFC and CHL are separate legal entities, CFC argues that it cannot be held liable based on a transaction that involved only CHL and Plaintiff. CFC also argues that Plaintiff has failed to state a cognizable claim for violation of FDUTPA as Plaintiff does not tie the conclusory allegations to actual harm allegedly inflicted upon Plaintiff by CFC in regard to the loan at issue. CFC reiterates that CFC did not give Plaintiff a loan, much less a subprime loan or a teaser rate, and, therefore, Plaintiff is incapable of alleging sufficient facts showing he was actually aggrieved by an unfair or deceptive act of CFC.

Finally, CFC argues that Plaintiff's entire Second Amended Complaint is barred by Florida's banking statute of frauds, found in Florida Statute § 687.0304, since statements made during negotiations for a loan cannot give rise to a cause of action until they are reduced to writing and the writing is signed by both parties. CFC argues that Plaintiff never entered into a signed credit agreement promising a fixed rate mortgage for 30 years and, therefore, CFC argues Plaintiff's breach of the purported agreement for a 6.375% fixed interest rate for 30 years is barred by the banking statute of frauds. Likewise, CFC argues that Plaintiff's FDUTPA and tort claims are barred by the banking statute of frauds, as the statute of frauds bars claims that are "premised upon the same conduct and representations that were insufficient to form a contract." *Bankers Trust v. Basciano,* 960 So.2d 773, 778 (Fla. 5th DCA 2007).

In response, Plaintiff argues that the uniform residential loan application [DE–1, attachment to Ex. A] which offered a 6.375% fixed interest rate constitutes a written contract that Defendants breached by changing Plaintiff's loan to a 6.875% adjustable interest rate. Further, Plaintiff argues that CFC should be held liable for the fraudulent loan transactions committed by its wholly-owned subsidiary CHL due to the fact that CHL no longer exists and cannot be served with a summons.[5]

As matter of law, the Court concludes that Plaintiff's entire Second Amended Complaint is barred by the statute of frauds.[6] A credit agreement is defined as an "agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Fla. Stat. § 687.0304(1). Plaintiff's claim that Defendants promised Plaintiff a fixed interest rate of 6.375% for 30 years is an agreement to lend money or extend credit

---

**5.** Plaintiff also requests that the Court enter default judgment and reconsider Plaintiff's motion for default judgment against Defendants on the ground that Defendants misrepresented to the Court that CHL still exists and is a separate legal entity. The Court previously rejected Plaintiff's attempt to obtain a default judgment against Defendants [DE–24] and likewise denied Plaintiff's motion for reconsideration of the Court's Order denying default judgment [DE–27]. The Court refuses to reconsider its previous Orders as Plaintiff has presented no evidence of manifest errors of law or fact, or newly discovered evidence that would warrant reconsideration of these issues. *Burger King Corp. v. Ashland Equities,*

*Inc.,* 181 F.Supp.2d 1366, 1369 (S.D.Fla. 2002). Further, although Plaintiff raises arguments in regard to the inapplicability of the economic loss rule, CFC has not raised this defense and, therefore, the Court declines to consider these arguments.

**6.** "Where federal jurisdiction is based on diversity of citizenship, the substantive law of the forum state applies." *Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (11th Cir. 1982); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, Florida substantive law governs this action.

and, therefore, is a purported credit agreement requiring the application of Florida Statute § 687.0304. Yet, pursuant to Florida Statutes § 687.0304(2), a "debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." This statute has been labeled "a 'new' statute of frauds which was enacted to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement, the subsequent violation of which is actionable against the lender." *Brenowitz v. Centr. Nat. Bank,* 597 So.2d 340, 342 (Fla. 2d DCA 1992).

Nonetheless, Plaintiff is attempting to do exactly what this statute prohibits— that is, enforce a credit agreement that was not reduced to writing and signed by both the creditor and debtor. Indeed, the purported credit agreement contradicts the actual loan documents that were fully executed and signed by both Plaintiff and CHL. While Plaintiff alleges that a contract for a fixed interest rate of 6.375% for 30 years exists in the form of the uniform residential home loan application [DE–1, attachment to Ex. A], Plaintiff has not and cannot allege sufficient facts demonstrating that the purported credit agreement complies with the banking statute of frauds in order for the credit agreement to be enforceable. Importantly, Plaintiff has not and cannot allege a writing between Plaintiff and CFC as the uniform residential home loan application was issued by CHL and not CFC. Moreover, Plaintiff has

not and cannot present a writing signed by either CHL or CFC that purports to embody the promise of a fixed interest rate of 6.375% for 30 years. Notably absent from the uniform residential home loan application that serves as the basis for Plaintiff's claim is any signature by CFC, much less CHL. Thus, as a matter of law, the Court concludes that Plaintiff's breach of contract claim is barred by Florida's banking statute of frauds and, therefore, must be dismissed.

Moreover, Plaintiff's claims for violation of FDUTPA,[7] negligent misrepresentation and fraud and deceit are based upon the same conduct and representation that serves as the basis for Plaintiff's breach of contract claim—that is, Defendants' purported representation that Plaintiff would receive a fixed interest rate loan. [DE–15–1, ¶¶'s 8, 9, 35, 41, 44, and 48]. However, Florida courts consistently hold that the statute of frauds also serves to bar any claims that are "premised on the same conduct and representations that were insufficient to form a contract and are merely derivative of the unsuccessful contract claim." *Bankers Trust,* 960 So.2d at 778; *see also Mark Andrew of Palm Beaches Ltd. v. GMAC Commercial Mortgage Corp.,* 265 F.Supp.2d 366, 382 (S.D.N.Y. 2003) (holding that under Florida law, when banking statute of frauds prohibited plaintiff from enforcing an oral contract, claims for fraud and negligent misrepresentation seeking damages based on same conduct and representations are merely derivative of claim for breach of contract and are prohibited); *see also Conner, I, Inc. v. Walt Disney Co.,* 827 So.2d 318 (Fla. 5th DCA 2002) (dismissing negligent misrepresentation claim where oral contract was unenforceable). "To hold other-

---

**7.** As discussed more fully above in footnote 3, the only unfair or deceptive acts alleged to have been committed by Defendants relate to the purported promise of a fixed interest rate loan.

wise would allow every failed breach of contract claim to morph into a negligent misrepresentation or FDUTPA claim;" however, the "well-established laws governing contracts should not be so casually dismissed." *Id.* Therefore, the Court concludes that Plaintiff's claims for violation of FDUTPA,[8] negligent misrepresentation and fraud and deceit, being premised upon the same conduct and representation as the barred breach of contract claim, are likewise barred by the banking statute of frauds and must be dismissed.

## III. CONCLUSION

Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Countrywide Financial Corporation's Motion to Dismiss Second Amended Complaint [DE–22] is hereby **GRANTED.**

2. Plaintiff's Motion to Show Cause Why Defendants Motion to Dismiss Second Amended Complaint Should be Denied [DE–28] is hereby **DENIED.**

3. Plaintiff's Second Amended Complaint [DE–15–1] is hereby **DISMISSED WITH PREJUDICE** as to Defendant Countrywide Financial Corporation.

---

**8.** The Court also concludes that Plaintiff's claim for violation of FDUTPA fails on the additional ground that Plaintiff has not alleged any deceptive or unfair acts by CFC that inflicted harm upon Plaintiff. On the contrary, the lending relationship and the purported misrepresentation that serves as the basis for Plaintiff's claims are based upon alleged conduct and representations by CHL. Plaintiff obtained the uniform residential home loan application and the subsequent loan from CHL, not CFC. Thus, there are no allegations of any unfair or deceptive act by CFC that aggrieved Plaintiff in regard to his home loan that could constitute a violation of FDUTPA. *See Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.,* Case No. 04–60861–CIV–MARTINEZ, 2005 WL 975773, at *8 (S.D.Fla. Mar. 4, 2005) (holding that to "state a cause of action under [FDUTPA], a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act committed by the [defendant]").