# IN THE COURT OF APPEALS OF IOWA

No. 22-1865
Filed June 19, 2024

**COUNTY BANK,**
    Plaintiff-Appellee,

**vs.**

**CLINTON ALLAN SHALLA and MICHELLE LYNN SHALLA,**
    Defendants-Appellants.

_____

**CLINTON ALLAN SHALLA and MICHELLE LYNN SHALLA,**
    Counterclaim Plaintiffs-Appellants,

**vs.**

**COUNTY BANK,**
    Counterclaim Defendant-Appellee.

_____

**CLINTON ALLAN SHALLA and MICHELLE LYNN SHALLA,**
    Third Party Plaintiffs-Appellants,

**vs.**

**CHRIS GOERDT and PEOPLES TRUST AND SAVINGS BANK,**
    Third Party Defendants-Appellees.

---

Appeal from the Iowa District Court for Washington County, Michael J. Schilling (summary judgment and discovery extension) and Shawn Showers (directed verdict and new trial), Judges.


Appellants appeal the district court order for summary judgment, grant of a directed verdict, denial of an extension for discovery, and denial of a new trial.

**AFFIRMED AND REMANDED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants Clinton Allan Shalla and Michelle Lynn Shalla.

John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for appellee County Bank.

Ryan Fisher of Bradley & Riley PC, Cedar Rapids, for appellee Chris Goerdt.

Ann C. Gronlund, Matthew L. Preston, Brad J. Brady, and Jared T. Favero of Brady Preston Gronlund PC, Cedar Rapids, for appellee Peoples Savings Bank.

Heard by Schumacher, P.J., and Ahlers and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Appellants Clinton and Michelle Shalla argue the district court erred in granting summary judgment and a directed verdict in finding Iowa Code section 535.17 (2018) as to the statute of frauds applicable to the Shallas' non-contract claims; in denying them additional time for discovery; in its application of the principles of vicarious liability; and in denying a new trial because the verdict failed to effectuate substantial justice.

## I. Background Facts and Prior Proceedings

This case originated in 2018 when County Bank filed a foreclosure petition against the Shallas as a result of the Shallas' delinquent payments on a loan owed to County Bank. The Shallas filed a number of counterclaims and third-party claims against County Bank; their loan officer and County Bank employee, Chris Goerdt; and Goerdt's former employer, Peoples Trust and Savings Bank.

The Shallas' relationship with Goerdt began in 2015. Clint Shalla purchased a 442-acre farm in 1989. But Clint defaulted on the loan obligations on the property, and that resulted in foreclosure. Clint then entered into a debt settlement agreement that included a right to buy back the property for $497,074.79. He was required to provide notice of his intent to exercise this option by August 15, 2015. Around that time, Clint engaged Goerdt, then president of Peoples Trust, to provide financing for the buyback. The Shallas trusted Goerdt and reported him to be "accessible and responsive." He communicated with Clint often by text, and he would meet with the Shallas, although Clint found some of the meeting locations to be unusual, such as a restaurant parking lot. The Shallas allege they entered into an oral agreement with Goerdt to facilitate the buyback of the property and

provide financing. But the Shallas failed to exercise the buyback option by the deadline. The Shallas blamed Goerdt for this failed buyback, but Goerdt and Peoples Trust asserted the Shallas failed to inform them of any deadline to exercise the option until after it had passed.

After the Shallas failed to timely exercise the buyback, Goerdt negotiated a new deal to buy the property for the Shallas at a price of $1.25 million. Around this same time, Goerdt left the employment of Peoples Trust and began employment with County Bank. Goerdt took the Shallas' loan application with him to County Bank. The Shallas eventually executed a promissory note with County Bank for $1.3 million. The loan included $1.25 million for the purchase of the property and $50,000 for home improvements. The day of the closing, County Bank issued a cashier's check to Peoples Trust for the benefit of the Shallas. The Shallas allege that after Goerdt provided them with this check, he directed them to arrange a $25,000 cash withdrawal at Peoples Trust to pay closing costs. Clint obtained $25,000 in cash from Peoples Trust, and Goerdt asked that they meet in the parking lot of a fast-food restaurant. Clint handed off the cash to Goerdt in the parking lot.

The Shallas later alleged Goerdt misappropriated these funds. The withdrawal of such a large sum of cash from Peoples Trust came to the attention of County Bank president Dan O'Rourke. Because of the Shallas' allegations that the money had disappeared, County Bank began an internal investigation and eventually credited them $25,000 on their mortgage. The Goerdt-related problems did not end there. An avalanche of allegations from bank customers led to further investigation and the termination of Goerdt's employment in May 2016. Goerdt

was federally indicted on sixteen counts of crimes related to his actions with Peoples Trust and County Bank. He pled guilty to all but one count.

The Shallas ceased making payments on their mortgage to County Bank, and County Bank initiated a foreclosure action. The Shallas then retained legal counsel. During litigation, the Shallas discovered that in 2016, Goerdt used $2218 from their County Bank account to pay his in-laws' property taxes. In response to the foreclosure action, the Shallas asserted counterclaims and affirmative defenses of fraud, equitable estoppel, vicarious liability, and aiding and abetting the actions of Goerdt. They also asserted third-party claims against Peoples Trust for vicarious liability for Goerdt's acts, and against Goerdt for conversion, negligence, and fraud. Peoples Trust and Goerdt asserted the Shallas' claims were barred by the statute of frauds in Iowa Code section 535.17.

During litigation, the parties scheduled depositions, but in light of the criminal indictment, Goerdt was advised by counsel that he should not testify. The court granted a motion to suspend filed by the Shallas, having found the case should not continue until after Goerdt could be deposed. The trial date was continued, but the discovery deadlines were not extended. The Shallas elected to suspend some of their discovery efforts until Goerdt could be deposed. This included choosing not to depose another officer of Peoples Trust before the pretrial discovery deadline had passed. The Shallas later moved to extend the case deadlines to have more time for discovery. The district court denied this extension, finding it was not in the interest of justice.

Peoples Trust moved for summary judgment on several of the Shallas' claims, including their negligence and fraudulent misrepresentation claims against

Peoples Trust and Goerdt. The court granted the motion for summary judgment as to the negligence and fraudulent misrepresentation claims, citing Iowa Code section 535.17. The Shallas' conversion claims against Peoples Trust were severed before trial.

A five-day jury trial was held in September 2022. The court granted a directed verdict as to the Shallas' claims of fraud and conversion against County Bank and as to their claims of negligence and fraud against Goerdt. County Bank was granted relief on its foreclosure action. Only the claim of conversion against Goerdt was presented to the jury. The jury found Goerdt committed conversion by misappropriating $5800 from the Shallas and awarded that amount in actual damages. The jury found for Goerdt on all other claims of conversion. No other damages were awarded to the Shallas. A stipulation between the Shallas and Peoples Trust prevented the Shallas from recovering from Peoples Trust on their conversion claim. The Shallas filed a motion for a new trial which was denied. The Shallas appeal.

## II.    Analysis

The Shallas appeal the district court's summary judgment and directed verdict rulings dismissing some of their claims against Peoples Trust and Goerdt based on Iowa Code section 535.17. They also appeal the court's decision denying a request for an extension of discovery deadlines, granting a directed verdict for County Bank based on vicarious liability, and denying the motion for a new trial.

a. Iowa Code Section 535.17 and Non-contract Claims

The Shallas argue the district court improperly found Iowa Code section 535.17 precluded their claims in tort against Peoples Trust and Goerdt. We review grants of summary judgment for correction of errors at law. *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). Summary judgment is warranted when the moving party can show there is no issue of material fact. *Id.* at 544–45. "A genuine issue of fact exists if reasonable minds can differ on how an issue should be resolved." *Walker v. State*, 801 N.W.2d 548, 554 (Iowa 2011). "We view the evidence in the light most favorable to the nonmoving party." *Banwart*, 910 N.W.2d at 545.

The Shallas allege Peoples Trust breached an oral promise made by Goerdt to secure financing and exercise the buyback option on the farm property. This promise was the basis for their actions of negligence and fraudulent misrepresentation against Goerdt and Peoples Trust. The district court granted summary judgment on these claims based on this court's ruling in *Geiger v. Peoples Trust & Savings Bank*, where we found section 535.17 applies to bar tort claims, like fraudulent misrepresentation, where no written credit agreement exists. No. 18-1428, 2019 WL 4678179, at *4–5 (Iowa Ct. App. Sept. 25, 2019).

Iowa Code section 535.17(1) states: "A credit agreement is not enforceable in contract law by way of action or defense by any party unless a writing exists which contains all of the material terms of the agreement and is signed by the party against whom enforcement is sought." When a credit agreement is the basis for a claim, section 535.17 applies, regardless of whether the claim is in tort or contract. *Geiger*, 2019 WL 4678179, at *4–5.

The Shallas request we disregard *Geiger*, in part because they claim it did not consider legislative history. But "[w]hen a statute's text and meaning is clear, 'we will not search for a meaning beyond the express terms of the statute or resort to rules of construction.'" *Est. of Butterfield by Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 838 (Iowa 2023) (quoting *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021)). When the meaning of a statute is ambiguous we may consider legislative history. *Id.* at 839–40. And "[s]tatutes need to be read as a whole, both in initially determining whether ambiguity exists and, later, in construing the statute." *Porter v. Harden*, 891 N.W.2d 420, 425 (Iowa 2017). Section 535.17 also defines many terms at issue, and "[w]hen the legislature has defined words in a statute—that is, when the legislature has opted to 'act as its own lexicographer'—those definitions bind us." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014) (quoting *State v. Fischer*, 785 N.W.2d 697, 702 (Iowa 2010)). An examination of section 535.17 reveals it is not ambiguous. *See Geiger*, 2019 WL 4678179, at *4–5; *see also* Iowa Code § 535.17.

Section 535.17(5)(c) defines a "credit agreement" as "any contract made or acquired by a lender to loan money, finance any transaction, or otherwise extend credit for any purpose, and includes all of the terms of the contract." And as the *Geiger* court highlighted, the definition of "contract" is broad under section 535.17, concluding it encompassed the agreement the appellants in *Geiger* were seeking to enforce. A "contract" is "a promise or set of promises for the breach of which the law would give a remedy or the performance of which the law would recognize a duty." *Id.* § 535.17(5)(b). Section 535.17 also instructs that it "shall be interpreted and applied purposively." And our supreme court has determined:

> Iowa Code section 535.17(6) controls over any ambiguity in the provisions of section 535.17 and clearly requires that any alleged credit agreements must be in writing to be enforceable "to ensure that contract actions and defenses on credit agreements are supported by clear and certain written proof of the terms of such agreements to protect against fraud and to enhance the clear and predictable understanding of rights and duties under credit agreements."

*Clinton Nat. Bank v. Saucier*, 580 N.W.2d 717, 722 (Iowa 1998) (quoting Iowa Code § 535.17(6)).

Section 535.17(7) states, "[t]his section entirely displaces principles of common law and equity that would make or recognize exceptions to or otherwise limit or dilute the force and effect of its provisions concerning the enforcement in contract law of credit agreements or modifications of credit agreements." This court in *Geiger* considered the language in section 535.17 and persuasive authority from other jurisdictions with similar statutes,[1] and determined that

---

[1] Persuasive authority from other states with similar statutes shows the statute of frauds cuts off a tort claim based on an unenforceable contract. *See, e.g.*, *Dixon v. Countrywide Fin. Corp.*, 664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009) ("Florida courts consistently hold that the statute of frauds also serves to bar any claims that are premised on the same conduct and representations that were insufficient to form a contract and are merely derivative of the unsuccessful contract claim." (cleaned up for readability) (citation omitted)); *see also Horseshoe Entm't, L.P. v. Gen. Elec. Capital Corp.*, 990 F. Supp. 737, 743 (E.D. Mo. 1997) (surveying other jurisdictions with credit agreement statutes and concluding, "The majority of the cases hold that a credit agreement statute of frauds bars all actions based on an alleged oral credit agreement, regardless of the theory of recovery asserted. The reasoning behind these decisions is that to accept such allegations as affording recovery, grounded in concepts other than breach of contract, simply provides an easy avenue for resourceful attorneys to circumvent the credit agreement statute, thus defeating the legislative intent to prohibit claims stemming from hard-to-defend oral representations." (cleaned up for readability) (internal footnote and citation omitted)); *Ohio Valley Plastics, Inc. v. Nat'l City Bank*, 687 N.E.2d 260, 264–65 (Ind. Ct. App. 1997) ("[T]he statute of frauds at issue in the present case applies broadly, even to an action upon an agreement with a creditor to enter into a new credit agreement . . . Regardless of whether the present cause of action is labeled as a breach of contract, misrepresentation, fraud, deceit, promissory

plaintiffs "cannot raise in tort what they cannot prove in contract: the existence of an enforceable contract." 2019 WL 4678179, at *6. We come to the same conclusion. The statute requires a broad application to meet its requirements under 535.17(6).

There is no dispute the agreement at issue was not in writing. The Shallas allege Goerdt orally promised to secure financing for the buyback option. A credit agreement is a contract to lend money, and Goerdt's promise to secure financing fits within that definition. The Shallas allege Goerdt and Peoples Trust "broke a promise to lend them money. They request damages resulting from this broken promise. Thus, they are seeking to enforce 'a promise . . . for the breach of which the law would give a remedy.'" *See id.* at *4 (quoting Iowa Code § 535.17). The Shallas seek a remedy for the breach of their oral contract, and they assert claims of negligence and fraudulent misrepresentation. These claims depend on the existence of the oral contract.

The Shallas claim Goerdt and Peoples Trust fraudulently induced them to enter the oral agreement, and they also claim Goerdt and Peoples Trust were negligent in effectuating that agreement. Both claims rely on the existence of the promise. Peoples Bank and Goerdt argue this case "is Geiger 2.0" and because

---

estoppel, its substance is that of an action upon an agreement by a bank to loan money. Therefore, the statute of frauds applies." (cleaned up for readability) (citation omitted)).
*Geiger v. Peoples Tr. & Sav. Bank*, 940 N.W.2d 46 (Iowa Ct. App. 2019).
And see also *Twiford Enterprises, Inc. v. Rolling Hills Bank & Tr.*, No. 20-CV-28-F, 2020 WL 5248561, at *1 (D. Wyo. Aug. 5, 2020), *aff'd*, No. 20-8048, 2021 WL 2879126 (10th Cir. July 9, 2021), following the reasoning of *Geiger*.

the issue is the same as in *Geiger*,[2] the resolution must also be the same. *See id.* at *6. Taken in totality, section 535.17 demands a broad application that allows the enforcement of only written credit agreements, both in tort and in contract, and the Shallas, without a writing, cannot show that there was ever a credit agreement for Goerdt and Peoples Trust to breach. *See id.* at *5–6; Iowa Code § 535.17(6), (7); *Saucier*, 580 N.W.2d at 722. The district court did not err by granting summary judgment and a directed verdict on this issue.

> b. Discovery Deadline

The Shallas also argue that the district court erred in denying additional time for discovery. We review decisions on the extension of discovery deadlines for abuse of discretion. *Hill v. McCartney*, 590 N.W.2d 52, 54 (Iowa Ct. App. 1998). "[T]he exercise of that discretion will not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Id.* at 54–55. "In reviewing decisions regarding discovery, we give the district court wide latitude." *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013).

The Shallas assert that after Goerdt was advised he should not testify until after sentencing in his criminal case, the parties agreed to suspend discovery until Goerdt could be deposed. Peoples Trust, County Bank, and Goerdt dispute this and maintain the Shallas only ever requested *Goerdt's deposition alone* be delayed. The Shallas cite no portion of the record to support their claim. In any case, once they determined Goerdt was unavailable for testimony, the Shallas

---

[2] "The alleged fraudulent conduct is an inducement to a loan agreement the defendants later broke. In other words, the defendants broke a promise to lend them money." *Geiger*, 2019 WL 4678179, at *4.

chose only to request that the court suspend the trial and hearing on the motion for summary judgment until after Goerdt could be deposed. The Shallas did not request that the discovery deadlines be altered, and they waited until two years after those deadlines had passed to bring the issue before the court. They then sought an alteration to the deadline to depose another officer of Peoples Trust. This officer was not the subject of a criminal investigation that would prevent him or her from testifying. These circumstances were laid out in Peoples Trust's resistance and considered by the district court.

Considering it had been two years since the deadline passed, there was ample opportunity for the Shallas to conduct discovery. As such we cannot say the court's decision to deny an extension of the discovery deadlines was "clearly unreasonable" or based on "clearly untenable grounds." *See McCartney*, 590 N.W.2d at 54.

    c. Application of Vicarious Liability

The Shallas argue that the district court improperly applied the principles of vicarious liability in granting a directed verdict for County Bank[3] on the Shallas' claims of conversion. The court found Goerdt was acting outside the scope of his authority. We review a directed verdict for correction of errors at law. *Royal Indem.*

---

[3] It is unclear from the Shallas' brief if they also raise this argument against Peoples Trust: "The Trial Court directed a verdict as to County Bank on the basis that Goerdt was acting outside the scope of his authority," but they also wrote "[t]he aforementioned facts make clear each . . . act committed by Goerdt . . . while under the scope of his role as an officer of Peoples and County." Despite referring to Goerdt's time with Peoples Trust in their brief, they reference no evidence regarding this period. That said, the Shallas clarified at oral argument this claim was limited to County Bank. Consequently, we limit our discussion to vicarious liability as it applies to County Bank as it concerns the approximate seventy-nine days Goerdt was employed by County Bank.

*Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 849 (Iowa 2010). In a directed verdict "[t]he question is whether, viewing the evidence in the light most favorable to the nonmoving party, substantial evidence supports each element of the cause of action." *Charles v. Houseal*, No. 20-0741, 2021 WL 811179, at *1 (Iowa Ct. App. Mar. 3, 2021).

"The well established rule is that under the doctrine of respondeat superior, an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment." *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). There are two elements to a claim of vicarious liability: "proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment." *Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 797 (Iowa 1994). Our supreme court has laid out a number of factors to consider in determining whether conduct occurred within the scope of employment:

> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect that such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal.

*Godar*, 588 N.W.2d at 706 (citation omitted). Additionally, "whether or not it is just that the loss resulting from the servant's acts should be considered as one of the

normal risks to be borne by the business in which the servant is employed." *Id.* (citation omitted).

The acts committed by Goerdt, while a consequence of his position at the bank, were outside the scope of his employment. The Shallas' claims are largely regarding the exchange of $25,000 in cash in the fast-food parking lot and Goerdt's use of the Shallas' account to pay his in-laws property taxes.

> [F]or an act to be within the scope of employment the conduct complained of "must be of the same general nature as that authorized or incidental to the conduct authorized." Thus, an act is deemed to be within the scope of one's employment "where such act is necessary to accomplish the purpose of the employment and is intended for such purpose."

*Id.* at 705 (quoting *Sandman v. Hagan*, 154 N.W.2d 113, 117 (Iowa 1967)). Clint testified to meeting Goerdt in parking lots. This method of conducting business is a substantial deviation from a banker's normal conduct, and the record shows that it was conducted in this way to benefit Goerdt personally. This behavior was not in the scope of his employment. Goerdt's use of the Shallas' money to pay his in-laws' property taxes was also not in the scope of his employment. Goerdt was criminally charged for this act; his acts were for his own personal benefit. *See id.* at 706.

County Bank cannot be vicariously liable for Goerdt's actions when those actions are clearly outside the scope of his employment. *See Biddle*, 518 N.W.2d at 797. It is not within the scope of employment of a banker to steal funds from customer's bank accounts or meet customers in parking lots to exchange bags of cash. While bankers deal in money, that does not mean Goerdt's efforts to steal money from the bank's customers are of that same general nature or within the

scope of his employment. *See Sandman*, 154 N.W.2d at 117; *Biddle*, 518 N.W.2d at 797. We affirm on this issue.

### d. The Verdict and Substantial Justice

The Shallas' final argument is that the verdict failed to effectuate substantial justice. They argue their inability to conduct further discovery and the court's ruling applying the statute of frauds prejudiced their ability to present their case.

We review a district court's denial of a new trial for failure to administer substantial justice for an abuse of discretion. *Crow v. Simpson*, 871 N.W.2d 98, 105 (Iowa 2015). "A district court has broad discretion in deciding whether to grant or deny a new trial on the ground that the verdict failed to administer substantial justice between the parties." *Id.* at 108. Abuse of discretion occurs when the court acted on grounds clearly untenable or to an extent clearly unreasonable. *Id.*

The Shallas' argument relies heavily on their contentions that additional discovery should not have been denied and the section 535.17 statute of frauds does not apply to tort claims. They allege these actions by the district court "inhibited [their] ability to present their case." Having found these claims without merit, we cannot find the verdict failed to effectuate substantial justice. The district court did not abuse its discretion in denying a new trial. *See id.*

### e. County Bank's Attorney Fees

Under Iowa Code section 625.22(1) attorney fees may be awarded in a judgment on a written contract that provides for them. This court may also award appellate attorney fees under this provision. *GreenState Credit Union v. Prop. Holders, Ltd.*, No. 21-0498, 2022 WL 2154816, at *5 (Iowa Ct. App. Jun. 15, 2022). The mortgage agreement between the Shallas and County Bank provides that the

Shallas pay attorney fees, and we determine that County Bank should be awarded appellate attorney fees. But as we do not have the requested amount of attorney fees before us, we remand the case to the district court for a determination of appellate attorney fees for County Bank.

### III. Conclusion

For the above stated reasons, we affirm the district court and remand for a determination of County Bank's appellate attorney fees.

**AFFIRMED AND REMANDED.**

Ahlers, J., concurs; Langholz, J., partially dissents.

**LANGHOLZ, Judge** (concurring in part and dissenting in part).

I join much of the majority's well-reasoned opinion. I agree that the district court correctly granted a directed verdict to County Bank and did not abuse its discretion in denying Clinton and Michelle Shalla an extension of the discovery deadline or their motion for a new trial on their conversion claim. I also agree that County Bank should be awarded appellate attorney fees.

Yet I cannot agree that the district court properly dismissed the *tort* claims against Chris Goerdt and Peoples Trust and Savings Bank based only on a statute that makes certain agreements "not enforceable *in contract law*." Iowa Code § 535.17(1) (2018) (emphasis added). True, a panel of our court affirmed a similar dismissal in an unpublished decision. *See Geiger v. Peoples Tr. & Sav. Bank*, No. 18-1428, 2019 WL 4678179, at \*4–5 (Iowa Ct. App. Sept. 25, 2019).[4] But an unpublished case is not binding on us. *See In re S.O.*, 967 N.W.2d 198, 206 (Iowa Ct. App. 2021); Iowa R. App. P. 6.904(2)(a)(2). A statute is. And this statute is unambiguously limited to claims "in contract law." Iowa Code § 535.17(1). So I respectfully dissent from the majority's decision to affirm dismissal of the tort claims against Goerdt and Peoples Trust.

Still, I would start at the same place as the majority—the statute's text. *See Calcaterra v. Iowa Bd. of Med.*, 965 N.W.2d 899, 904 (Iowa 2021). The statute relied on to dismiss the Shallas' tort claims says: "A credit agreement is not enforceable in contract law by way of action or defense by any party unless a writing exists which contains all of the material terms of the agreement and is

---

[4] In fact, *Geiger* was brought against two of the same defendants here—Geordt and Peoples Trust—by plaintiffs represented by the same counsel as the Shallas.

signed by the party against whom enforcement is sought." Iowa Code § 535.17(1). And like the majority, I see no need to look to legislative history to interpret this unambiguous text. *See Calcaterra*, 965 N.W.2d at 904 ("If statutory language in its proper context is unambiguous, we do not look past the plain meaning of the words."). By its plain terms, this statute of frauds requires "[a] credit agreement" to be, among other things, in writing or else it "is not enforceable in contract law by way of action or defense by any party." Iowa Code § 535.17(1).

The statute's phrase "in contract law" should cause a full stop. *Id.*

There's a reason that for more than a century, most first-year law students have had to shuffle from their Contracts class to Torts class to learn each of these areas of the law: contract law and tort law are distinct. *See* Robert W. Gordon, *The Geological Strata of the Law School Curriculum*, 60 Vand. L. Rev. 339, 340–42 (2019). Contract law is generally concerned with enforcing the performance of promises. *See* 1 *Corbin on Contracts* § 1.1, at 2 (1993) ("That portion of the field of law that is classified and described as the law of contracts attempts the realization of reasonable expectations that have been induced by the making of a promise."). While tort law "is concerned with the allocation of losses arising out of human activities" and "compensat[ing] for injuries sustained by one person by the conduct of another."[5] W. Page Keeton et al., *Prosser and Keeton on Torts* § 1, at 5–6 (5th ed. 1984).

---

[5] Tort law—unlike contract law—is also generally focused on remedying *wrongful* conduct where the actor is at fault, either intentionally or negligently. *See* Dan B. Dobbs, *The Law of Torts* 2–3 (2000). This focus is apparent in its name, which "is derived from the Latin 'tortus' or 'twisted.'" *Prosser and Keeton on Torts* § 1, at 2. Thus, "a tort is conduct which is twisted or crooked, not straight." *Id.*

The Shallas do not bring contract actions against Goerdt and Peoples Trust. The actions they assert—negligence and fraudulent misrepresentation—are torts. But this statute does not bar any actions in tort—it bars only actions "in contract law." Iowa Code § 535.17(1). So the statute does not apply here.

The majority glosses over this part of the statute and instead dives into the statute's definition of "credit agreement." I don't see that term as particularly relevant because however broadly it is written, the statute only makes an unwritten credit agreement unenforceable "in contract law." Iowa Code § 535.17(1). And again, the Shallas' claims are not actions in contract law. So even if the statements Goerdt made to the Shallas were a credit agreement under the statute, it matters not—the Shallas were not seeking to enforce them by an action in contract law.

Part of the confusion seems to stem from the majority—and *Geiger*, on which it relies—equating claims of negligence and fraudulent misrepresentation with contract claims. But these are distinct claims that require proof of distinct facts—even if the same general course of conduct might sometimes support both contract and tort claims. A claim for fraudulent misrepresentation does not seek to enforce a promise—it seeks to remedy lying about ever intending to follow through on the promise. *See Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 565 (Iowa 1987) (explaining that "[t]he mere breach of a promise is never enough in itself to establish the fraudulent intent" required to bring a fraudulent misrepresentation claim because the speaker must have had "an existing intention not to perform" the broken promise when it was made (cleaned up)). And while a negligence claim does seek to enforce a breach—it's not a breach of a promise, but a breach of "a duty to conform to a standard of conduct to protect others."

*Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009) (quoting *Stotts v. Eleveth*, 688 N.W.2d 803, 807 (Iowa 2004)). So by asserting fraudulent misrepresentation and negligence claims, the Shallas are neither "seeking to enforce a promise" nor "seek[ing] a remedy for the breach of their oral contract" as the majority concludes. (Cleaned up.)

The majority also looks to the surrounding statute for support. And again, I agree we should read the statute as a whole to understand its context. *See Calcaterra*, 965 N.W.2d at 904. But what I see at every point is contract law. So yes, we learn that the statute "shall be interpreted and applied purposively," as the majority notes. Iowa Code § 535.17(6). But reading on, it's "purposively *to ensure that contract actions and defenses* on credit agreements are supported by clear and certain written proof of the terms of such agreements to protect against fraud and to enhance the clear and predictable understanding of rights and duties under credit agreements." *Id.* (emphasis added). This text does not support any purpose to affect tort actions—especially not a fraud claim, as it states an intent "to protect against fraud." *Id.*; *see Nanos v. Harrison*, 117 A. 803, 805 (Conn. 1922) (reversing dismissal of fraud claim based on statute of frauds when claim did not seek enforcement of the oral contract, noting that otherwise "the statute of frauds, which was intended to prevent fraud, will serve as an aid in helping to perpetrate a fraud").

And true, the statute expressly and "entirely displaces" some "principles of common law and equity." Iowa Code § 535.17(7). But again, this displacement is limited to those principles "that would make or recognize exceptions to or otherwise limit or dilute the force and effect of its provisions *concerning the enforcement in contract law* of credit agreements or modifications of credit agreements." *Id.*

(emphasis added).  Such text cannot support displacing an action in tort law.  The limited nature of the displacement to only the express terms of section 537.17(1) is reinforced by the next sentence.  That provision clarifies that "this section does not displace any additional or other requirements of contract law,"—note once more the reference to contract law—"which shall continue to apply, with respect to the making of enforceable contracts, including the requirement of consideration or other basis of validation."  *Id.*  So looking at the whole statute only bolsters the plain meaning of section 537.17(1)—it applies only to bar actions "in contract law."

The majority and *Geiger* also rely on out-of-state cases.  But I do not find them persuasive.  For starters, none interprets a statute with a similar express limitation to actions "in contract law."[6]  Iowa Code § 537.17(1).  And one of the cases—interpreting the Missouri credit-agreement statute of frauds—was later rejected by the Missouri Court of Appeals based on a century of Missouri precedent that statutes of frauds do not limit tort actions even without our express language.  *See Mika v. Cent. Bank of Kansas City*, 112 S.W.3d 82, 90–93 (Mo. Ct. App. 2003).  The Missouri Court of Appeals also persuasively undermines that

---

[6] In *Dixon v. Countrywide Financial Corp.*, the statute applied to "an action on a credit agreement."  664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009) (quoting Fla. Stat. § 687.0304(2)).  Likewise, in *Horseshoe Entertainment, L.P. v. General Electric Capital Corp*, the statute barred "an action upon . . . a credit agreement."  990 F. Supp. 737, 743 (E.D. Mo. 1997); Mo. Rev. Stat. § 432.045(2) (1994).  And in *Ohio Valley Plastics, Inc. v. National City Bank*,  the statute applied to an "action upon an agreement."  687 N.E.2d 260, 263–65 (Ind. Ct. App. 1997) (quoting Ind. Code § 32-2-1.5-5, *recodified at* § 26-2-9-4 (2002)).  The majority also cites to *Twiford Enterprises, Inc. v. Rolling Hills Bank & Trust*, No. No. 20-CV-28-F, 2020 WL 5248561 (D. Wyo. Aug. 5, 2020), *aff'd*, No. 20-8048, 2021 WL 2879126 (10th Cir. July 9, 2021).  But the court there followed our unpublished decision in *Geiger*— without any independent analysis—because it was required to apply Iowa law under the parties' choice-of-law clause.  *See id.* at *7.

case's survey of other jurisdictions, noting that some of those—such as Illinois and Colorado—had more expansive statutory text prohibiting actions "on *or in any way related to a credit agreement*" or "an action *or claim related* to an oral credit agreement.  *Id.* at 92; *see* 815 Ill. Comp. Stat. 160/2; Colo. Rev. Stat. § 38-10-124(2).  What's more, the Missouri Court of Appeals is not alone in holding that a statute of frauds does not apply to tort claims.  *See, e.g.*, *Brown v. Founders Bank & Tr. Co.*, 890 P.2d 855, 861–64 (Okla. 1994) (holding credit-agreement statute of frauds does not bar fraud claim); *Munson v. Raudonis*, 387 A.2d 1174, 1176–77 (N.H. 1978) (holding that plaintiffs could bring an action for deceit based on an oral promise unenforceable under the statute of frauds); *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 231 (Tenn. Ct. App. 1976) (holding that statute of frauds did not apply to fraudulent misrepresentation claim); *Nanos*, 117 A. at 805.

I do not dispute that there may well be policy reasons that tort claims related to unwritten credit agreements should be barred the same as actions "in contract law."  Iowa Code § 535.17(1).  But we are not at liberty "to rewrite" a "statute in the guise of interpretation."  *Goche v. WMG, L.C.*, 970 N.W.2d 860, 866 (Iowa 2022).  If the legislature agrees with these policy concerns, it could enact an amendment removing the statute's clear limitation to contract actions or adding broader language sweeping in tort actions.[7]

---

[7] Indeed, after the Missouri Court of Appeals interpreted its credit-agreement statute of frauds to not apply to tort actions, *see Mika*, 112 S.W.3d at 90–93, the Missouri legislature did just that—enacting a new statute that applied to "an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement."  *BancorpSouth Bank v. RWM Props. II, LLC*, No. 4:11CV00373, 2011 WL 4435271, at *3 (E.D. Mo. Sept. 23, 2011) (quoting Mo. Rev. Stat. § 432.047(2) (2004)).

Until then, the statute currently on the books does not apply to the Shallas' tort claims. I would thus reverse the district court's grant of summary judgment to Peoples Trust and its directed verdict for Goerdt and remand for further proceedings on these claims.